**Theresa GUARNIERI, as Administratrix of the goods, chattels and credits which were of Nazario Guarnieri deceased, Plaintiff-Appellee,**

**v.**

**KEWANEE–ROSS CORPORATION, Defendant-Appellant and Third-Party Plaintiff-Appellee (BURNHAM CORPORATION, Third-Party Defendant-Appellant).**

No. 144, Docket 24708.

United States Court of Appeals
Second Circuit.

Petition Filed Feb. 21, 1959.

Decided Oct. 2, 1959.

Sullivan & Cromwell, New York City (John F. Dooling, Jr., Stephen Rackow Kaye, New York City, on the brief), for defendant and third-party plaintiff, Kewanee-Ross Corp.

MacIntyre, Burke & Downey, New York City (John V. Downey, New York City, on the brief), for third-party defendant-appellant, Burnham Corp.

William C. Mattison, Brooklyn, N. Y. (James Dempsey, Peekskill, N. Y., Thomas Grimes, White Plains, N. Y., Thomas P. Keenan, Jr., Maspeth, N. Y., on the brief), for plaintiff-appellee, Theresa Guarnieri.

Before MEDINA, WATERMAN and MOORE, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Kewanee-Ross Corporation, defendant-appellant and third-party plaintiff-appellee petitions for a rehearing and for a consideration of the questions involved by the court *en banc*. Kewanee urges (1) an affirmance of the original judgment or a reversal and remand for a new trial, or, in the alternative (2) direction of a new trial between Kewanee and the third-party defendant-appellant, Burnham Corporation.

As grounds for its petition Kewanee asserts that this court misread: (1) the complaint; (2) the issues tendered by the pleadings; (3) the history and role of the pleadings after trial; (4) the issues actually litigated; and (5) the trial court's charge. In addition this court is said to have: (a) set aside a jury's verdict of passive negligence; (b) committed fundamental error as to the applicable law of the State of New York; (c) invaded the province of the jury; and (d) failed to follow the procedural requirements of Rule 50, 28 U.S.C.A.

Matching these alleged errors by the court are one or two errors or misconceptions even more fundamental on Kewanee's part which underlie its disagreement with the decision. These should be stated at the outset so that legal analysis can proceed from hypotheses supported by the record. The questions involved are important and Kewanee has advanced its position most ably and with vigor. As in almost every case there are aspects that cause little doubt; others as to which there is much greater uncertainty.

First, plaintiff sued Kewanee alone for negligence claiming that the injury resulting in the death of plaintiff's intestate "was caused by the negligence of the defendant, its agents and/or employees, * * * in that they failed and neglected to use proper and adequate materials and methods in the welding work upon the metal head of said 'boiler,' * * * ; in that the said welding was done in a careless and negligent manner; in that defendant, its officers, agents and/or employees failed to properly and adequately inspect the said work upon

the completion thereof; in that defendant, * * * permitted to be delivered to the Burnham Boiler Corporation, for tests under great pressure, the said defectively welded 'boiler'; in that defendant, * * * failed and neglected to warn the Burnham Boiler Corporation, * * * of the defective condition of said welding and of the fact that the said welding would not withstand the pressures to be demanded of it, and the defendant was otherwise negligent."

The action was not, as Kewanee now argues, one in which "plaintiff Guarnieri sued Kewanee-Ross Corporation as a third-party wrongdoer." To recover plaintiff was required to prove negligence against Kewanee and no other. This situation did not change when Kewanee filed its third-party complaint against Burnham. Plaintiff was still under a duty of proving negligence by Kewanee. Burnham by reason of the third-party complaint did not become a co-defendant or a joint tortfeasor. Burnham's liability, if any, was entirely dependent on principles of indemnity by agreement or imposed by law.

Second, the trial court's charge clearly informed the jury of the necessity of finding negligence on Kewanee's part before any verdict against Kewanee could be returned. In its charge the court stated the issue between plaintiff and Kewanee as "What are the claims here that these parties make? Plaintiff says that her husband was injured and killed and that that was the result of the negligence of the defendant Kewanee, and that the negligence is demonstrated by the faulty weld which attached this boss to the head of this cylinder" (486a). The court continued "For the time being, I am just going to talk about the plaintiff and Kewanee, because that is the primary litigation before us. We will come to Kewanee's claim against Burnham later (487a). * * * In summary, the plaintiff must prove negligence by Kewanee; that that negligence was the cause of the accident, and of course the injury. * * * The question is, did Kewanee's negligence cause the accident, if it was

negligence in the first place?" (487a). The necessity for finding affirmative misconduct, i. e., active negligence, by Kewanee was the keynote of the court's charge. Such excerpts as the following are illustrative: "In the light of the facts in this case, where the thing in issue is the weld of the boss to the head of this cylinder, this seems to break down into whether the defendant Kewanee used due care in preparing a proper formula or procedure for this welding, whether it used proper equipment and material, in so far as it supplied any of the material, and whether it made proper provision for testing the weld" (487a, 488a).

█ The court even permitted the jury to exonerate Kewanee if it found that Kewanee had transferred its duty to inspect to Burnham. The court in part instructed the jury "In other words, had Burnham agreed to perform the test which Kewanee, as a matter of ordinary care, would otherwise have to perform itself? * * * Did it constitute an exercise of reasonable care, due care, under the circumstances? * * * If you conclude that Kewanee was not negligent in the respects in which I have indicated, then you need go no further" (488a). Implicit in the jury's verdict in favor of the plaintiff and against Kewanee was that Kewanee had not transferred its own duty to inspect to Burnham. Kewanee took no exceptions to the charge. It, therefore, was not a reviewable issue on the appeal. See Rule 51, F. R.Civ.P.; Kane v. American Tankers Corp., 2 Cir., 1955, 219 F.2d 637; United States v. Bruswitz, 2 Cir., 1955, 219 F.2d 59, certiorari denied 1955, 349 U.S. 913, 75 S.Ct. 600, 99 L.Ed. 1247.

Third, under the court's charge specifically outlining the essential requirements for finding negligence on the part of Kewanee the jury brought in a verdict in favor of plaintiff against Kewanee, the only defendant plaintiff had sued. There could have been no verdict for plaintiff against Kewanee for passive negligence under the court's charge. Kewanee's present assertions that "the express jury finding of passive negligence was the only

foundation of plaintiff's verdict against Kewanee" (Pet. p. 3) and "the Court [this court] nevertheless unanimously affirmed the verdict of 'passive' negligence in favor of plaintiff Guarnieri against Kewanee" (Statement in support of petition for rehearing, p. 3) are misconceptions of the basis of the verdict. The trial court advised as to the law that a person who manufactures a dangerous device is liable to persons who are in the vicinity at the time it is being used. Even this liability was qualified by the necessity that injury be foreseeable. Finally there must be proximate cause. Here again the jury had to resolve this question under directions that "if you conclude that it was Burnham's superseding acts which were the proximate cause of this injury, and that it wasn't the normal consequence of Kewanee's negligence, if you find it, why, then, again you would return a defendant's verdict" (491a, 492a).

Nowhere in the trial court's charge as to the issues to be resolved between plaintiff and Kewanee is there any reference to the active-passive theory as applying between them. Only when the court had disposed of the issues between plaintiff and Kewanee did it turn to the claim-over, saying "On the other hand, if you conclude that there was negligence and it did cause the injury, negligence by Kewanee, and it did cause the injury, why, you bring in at that point a verdict for the plaintiff, and the plaintiff's part of the case is completed, and the controversy between the defendant Kewanee and the plaintiff is completed, and we then get to the next question, whether if Kewanee is liable to the plaintiff, Burnham is liable over to Kewanee?" (492a).

As to the so-called second stage the court was in error both in its charge and in the law of New York as to indemnification. The question was posed as "Did Burnham, by its contractual arrangements with Kewanee, undertake the obligation to indemnify it for the injuries caused during this test? In that regard, you will then come to the question of whether Burnham was negligent. In other words, did Burnham conduct this test with a lack of due care, and was it Burnham's lack of due care which caused the accident, which caused the injury?" (492a, 493a). The court then proceeded to treat Kewanee and Burnham as "joint-tortfeasors" and to apply principles of active and passive negligence to the claim between them disregarding completely the theory underlying the application of the principle. The court's own hypothetical illustration of the landlord-contractor type of case points up the error.

Kewanee calls attention to six recently decided New York cases in the trial courts and the Appellate Division in 1957 and 1958, a 1957 district court case, Stahlberg v. Hannifin Corporation, D.C. N.D.N.Y.1957, 157 F.Supp. 290, and a most recent case on the subject of active and passive negligence in the New York Court of Appeals, Putvin v. Buffalo Elec. Co., 5 N.Y.2d 447, 186 N.Y.S.2d 15, 158 N.E.2d 691 (April 9, 1959), all of which have been carefully considered.

■ The opinion of Chief Judge Conway in the Putvin case reaffirms the view of the New York law stated in the original opinion herein, 2 Cir., 263 F.2d 413. There in a most similar situation the Court of Appeals reiterated the rule that the indemnity action absent a contract to indemnify arises if the defendant's liability is "predicated on passive negligence imposed by law and that of the third party is based on active negligence" (5 N.Y.2d 447, at page 453, 186 N.Y.S.2d at page 20, 158 N.E.2d 691, at page 694).

The importance of the charge against the defendant made in the plaintiff's complaint was stressed by Chief Judge Conway who said "So it is that a claim over against a third person charging the third person with active negligence will be allowed if the original complaint can reasonably be interpreted as including an allegation of passive negligence on the part of the defendant. * * * Conversely, where the defendant is alleged to be guilty only of active as distinguished from passive negligence, impleader is improper as a matter of law, since an active-

ly negligent tort-feasor is not entitled to indemnity" (5 N.Y.2d at page 455, 186 N.Y.S.2d at page 21, 158 N.E.2d at page 695).

■ Plaintiff's complaint against Kewanee cannot be read as a charge of passive negligence—particularly in the light of the reading of the Putvin complaint of which the court said "We think, however, that it is not so difficult to determine where a defendant's negligence has been passive. By that we mean that it seems to us that one cannot be guilty of passive negligence merely, if he has been guilty of a fault of commission. It is the omission or failure to perform a nondelegable type of duty (e. g., the duty of an owner of realty or a shipowner to furnish the injured party with a safe place to work), as distinguished from the failure to observe for the protection of the interests of another person that degree of care and vigilance which the circumstances justly demand, which constitutes passive negligence entitling one to indemnity * * *. Clearly, such complaint charges the defendants with a fault of commission—negligence in the performance of their work. There is no suggestion in the complaint to the effect that defendants omitted to perform a nondelegable duty imposed upon them by law which would render them liable to plaintiffs as passive tort-feasors, but which would permit them to seek indemnity of Wallace & Tiernan, Inc., as the active and affirmative tort-feasor" 5 N.Y.2d at page 456, 186 N.Y.S.2d at page 22, 158 N.E.2d page 696.

Banks v. Central Hudson Gas & Electric Corp., 2 Cir., 1955, 224 F.2d 631, certiorari denied 1955, 350 U.S. 904, 76 S.Ct. 182, 100 L.Ed. 793, is not to the contrary. That case involved the nondelegable duty of a utility company to warn anyone whom it knew was being exposed to uninsulated high tension wires, of the presence of the high voltage in such wires. It was not disputed that both the utility company and Banks' employer knew that the wires were uninsulated and carried high voltage. In view of this common knowledge and in view of the fact that Banks' employer was operating in the immediate vicinity of the wires, it was held that the jury could find that the primary responsibility for warning Banks rested upon Banks' employer.

■ The Banks decision in fact supports the opinion here. The judgment of the district court was reversed and the case remanded for a new trial to determine whether the utility company had either a duty to de-energize the wires or to insulate them. The court held that failure to discharge one or the other of these duties, if found to exist, would bar the utility company from obtaining indemnification. Likewise here the failure by Kewanee to discharge its duty to test, assuming such a duty existed, would bar its indemnification claim.

The error in the charge as between Kewanee and Burnham led to further confusion in the verdict. The court divided the case into two parts, plaintiff against Kewanee, Kewanee against Burnham. So did the jury. Their separability was indicated by the court's comment to the jury that "there are two separate controversies, and your decision on the first will not be impaired by a failure to reach agreement on the second * * *" (503a). When finally the jury reported they said "We find unanimously for the plaintiff. * * * That is part one, your Honor, to the sum of $75,000." Upon inquiry from the court as to part two they said "Part two, we find passive negligence on the part of Kewanee; active negligence on the part of Burnham" (511a). Neither the charge nor the verdict was consistent with the law of New York on the subject of active and passive negligence.

In summary, under the allegations of the complaint and the court's charge with respect thereto, Kewanee's alleged breach of the duty to inspect its own work could not result in passive negligence. If Kewanee had a duty to inspect or test, the only way it could have discharged that duty was to have its employees actually inspect the boiler or to hire an independent contractor to do so. Had it hired an independent contractor to discharge

this duty and had Guarnieri been injured as a result of the independent contractor's failure to test it, then Kewanee would be entitled to indemnification from the independent contractor. But by Kewanee's own admission it neither tested the boiler itself nor hired another firm to do so.

Burnham's obligation to conduct whatever tests it chose to make in a safe place was a duty completely independent of any duty which Kewanee may have had, whether it be making a proper weld, using proper equipment, or testing for defects.

 Kewanee's obligation to the decedent to test or inspect was an integral part of its duty to turn out a properly made boiler. Its failure to perform this duty was no less active negligence than its failure to use proper equipment or, given proper equipment, its failure to make a proper weld. Breach of any one of these duties would constitute active negligence. Recovery over by Kewanee against Burnham would then be dependent upon such agreement, if any, as may have been made by these parties.

Burnham's duty to conduct its test in a safe place was not co-extensive with Kewanee's duty to turn out a properly made missile.

In the alternative Kewanee now raises the point that a new trial between Kewanee and Burnham should be granted. It argues that because no motion was made by Burnham within ten days under Rule 50(b) this court could not direct the entry of judgment in Burnham's favor but could only grant a new trial between these parties. Technical though the point is, as is well developed in the dissenting opinion of Mr. Justice Frankfurter in Johnson v. New York, N. H. & H. R. Co., 1952, 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77, that decision held that absent such a motion "respondent [here Burnham] is entitled only to a new trial, not to a judgment in its favor" (344 U.S. at page 54, 73 S.Ct. at page 128). In matters of practice it is particularly important that procedural rules and interpretations thereof be followed. They are the principal guideposts for the trial Bar in their conduct, decisions and strategy in the courtroom. Kewanee was entitled to have all the requirements of Rule 50 observed. For this reason the decision will be modified so as to direct that so much of the judgment as dismisses the third-party complaint be vacated and that the action between Kewanee and Burnham be remanded for a new trial.

The request by separate petition for *en banc* proceedings is denied, Judge MEDINA not voting.