The TOKIO MARINE & FIRE INSURANCE COMPANY, LIMITED, et al., Plaintiffs

v.

McDONNELL DOUGLAS CORPORATION,
Defendant.

McDONNELL DOUGLAS CORPORATION, Third-Party Plaintiff,

v.

JAPAN AIR LINES CO., LTD.,
Third-Party Defendant.

No. 75 Civ. 5915.

United States District Court,
S. D. New York.

July 19, 1978.

2. Such disposition renders moot Mr. Hill's motion herein of March 15, 1978 for leave to file exhibits.

Condon & Forsyth by Desmond T. Barry, Jr., George N. Tompkins, Jr., Stephen R. Stegich, III, Lawrence Mentz, Nathaniel F. Knappen, New York City, for plaintiff and third-party defendant Japan Air Lines Co., Ltd.

Crowe, McCoy, Agoglia, Fogarty & Zweibel, P. C., by Harold V. McCoy, Colby S. Morgan, Mineola, N. Y., for McDonnell Douglas Corp.

## MEMORANDUM OPINION

MOTLEY, District Judge.

On November 28, 1972 a DC–8–62 commercial airliner manufactured by the McDonnell Douglas Corporation (MDC) and owned and operated by Japan Air Lines Co., Ltd., (JAL) crashed shortly after takeoff from Sheremetievo Airport located in Moscow, U.S.S.R. As a result of the crash fifty two passengers were killed and others were injured, and the aircraft was totally destroyed. In broad outline the passengers'

representatives sued both MDC and JAL for wrongful death; JAL's subrogees sued MDC for the cost of the aircraft; and MDC sued JAL for indemnity and contribution in the event that MDC was held liable to the passenger plaintiffs.

MDC has settled the passenger suits thus terminating that aspect of the litigation. On November 2, 1977 this court granted summary judgment in favor of MDC and dismissed JAL's subrogees' action against MDC for the cost of the aircraft. The only remaining aspect of this complex litigation and the subject of this opinion is MDC's claim that JAL is liable to it for contribution and indemnity in order to compensate MDC for its passenger settlements. JAL has moved for summary judgment and for dismissal of these remaining claims of MDC. Rules 56 and 12(b), Fed.R.Civ.P. The motions are denied.

Jurisdiction of this action is based on diversity of citizenship. 28 U.S.C. § 1332(a)(2). MDC is a Maryland corporation with its principal place of business in California. JAL is a Japanese corporation.

The complex nature of this motion must be made clear at the outset so that the discussion of the facts may be read in a framework which will make them more comprehensible. Five separate lawsuits are involved including four passenger actions and the suit for the cost of the aircraft. In the context of these four suits MDC has asked for contribution and indemnity in the context of cross-claims, a counterclaim and a third-party action. JAL contends that the laws of two jurisdictions are relevant to its motion, New York and Illinois. MDC counters that either the law of California or, in the alternative, federal common law governs this motion for summary judgment. Regardless of the jurisdiction, the law of contribution and indemnity requires that the precise nature of the passengers' claims be examined when considering whether cause of action in contribution and indemnity is available to the party (MDC) which enters into a settlement agreement with these passengers.

*The Facts*

The discussion of each of the five separate actions involved in this motion will include the following elements: nature of the action and plaintiffs' specific causes of action as to MDC; the litigation history of the case; the nature ·of the settlement agreement between MDC and the passengers; and MDC's claims for indemnity and contribution which are at issue.

### *Sackheim v. Japan Air Lines Co., Ltd., No. 72 L16885*

### *Gerbick v. Japan Airlines Co., Ltd., No. 73 L 1767*

These two actions were commenced in the Circuit Court of Cook County, Illinois by representatives and next-of-kin of two American passengers aboard the aircraft. The two counts against MDC alleged eight specific instances of negligence in the design and construction of the aircraft and the instructions relating to its operation. Plaintiffs also allege that MDC breached its implied warranties in that the aircraft was delivered to JAL in an unreasonably dangerous condition which was one of the proximate causes of the crash and death of plaintiffs.

MDC has settled these actions for $875,-000 in *Sackheim* and $575,000 in *Gerbick* and has obtained general releases in return. MDC's claims for indemnity and contribution with respect to these two actions are contained in MDC's counterclaim in 75 Civ. 5915 (CBM) discussed *infra.*

### *Brettler v. Japan Air Lines Co., Ltd., 73 Civ. 1531 (CBM)*

This action was filed in this court by the representative of a New York citizen who died in the Moscow crash. The first count of the complaint alleges that MDC negligently designed, manufactured, assembled and sold the aircraft and failed to properly warn and instruct JAL as to the use of the aircraft. The third count would hold MDC liable to plaintiff under a breach of warranty (express or implied) theory. The final claim against MDC sounds in strict product liability.

This action was settled by MDC on the eve of trial in early 1977 for the sum of $800,000 in return for releases from the plaintiffs. In its answer to the complaint, MDC cross-claims against its co-defendant JAL alleging first, that it is entitled to indemnity from JAL because any negligence of MDC was "passive" while that of JAL was "active". Second, it also seeks, in the alternative, contribution from JAL in proportion to JAL's relative culpability for the crash.

*The Tokio Marine and Fire Insurance Company Limited v. McDonnell Douglas Corporation, 75 Civ. 5915 (CBM)*

After the crash of the JAL aircraft, these plaintiff insurance companies sued, as subrogees of JAL, to recover the cost of the aircraft from MDC. On November 2, 1977 this court granted summary judgment in favor of defendant MDC and dismissed the main action on the ground that the exculpatory clause of the MDC–JAL contract for the purchase of the aircraft precluded this suit by JAL (or its subrogees which stand in the shoes of JAL). The grant of summary judgment also mooted MDC's cross-claim against the third-party defendant JAL (which had been impleaded by a co-defendant of MDC). That cross-claim alleges that if MDC is liable to the subrogees of JAL, then JAL is liable to MDC for contribution of indemnity by virtue of the fact that JAL was either partly or primarily responsible for the accident in Moscow.[1]

MDC's counterclaim against the subrogees is still alive. In that counterclaim MDC seeks indemnity from the subrogees on the ground that, if MDC is required to pay passenger claims either in settlement or after judgment, it would only be due to JAL's negligence and not because of any negligence on the part of MDC. The parties to this action agree that this counterclaim covers *all* of MDC's claims for contribution and indemnity in all five actions. In short, it is an "omnibus" claim for contribution and indemnity which does duplicate the contribution and indemnity claims of MDC in the other four actions.

*Aiba v. McDonnell Douglas Corporation, 76 Civ. 5582 (CBM)*

This action was originally filed in the District Court for the Eastern District of Michigan. It was transferred to this court as a companion case to *Brettler* and *Tokio Marine*. The suit is by the representatives, heirs, and next-of-kin of twenty-six Japanese passengers who died in the Moscow crash. They have three causes of action against MDC; first, that MDC negligently designed, manufactured, assembled, inspected and sold the aircraft and failed to render proper warnings and instructions to JAL; second, that MDC is strictly liable to plaintiffs; and third, that MDC breached express or implied warranties which ran to plaintiffs.

MDC has settled this entire action for an aggregate of $6,000,000 and has obtained releases from plaintiffs.

MDC has filed a third-party action against JAL in this case praying for indemnity or contribution in the event that a judgment is rendered against MDC or MDC settles with plaintiffs out of court.

The instant motion for summary judgment filed by JAL seeks dismissal of MDC's cross-claim in *Brettler*, MDC's counterclaim against the subrogee insurance companies in *Tokio Marine*,[2] and MDC's third-party complaint in *Aiba* against JAL.

In sum, JAL seeks dismissal of all MDC's claims for either contribution or indemnity with respect to the out-of-court settlements on the ground that these claims are precluded under the relevant state law.

*Discussion*

1. *General Principles of Indemnity and Contribution*

Before focusing on the specific legal questions presented by this motion, a gener-

---

**1.** This cross-claim is somewhat perplexing since if JAL were responsible for the crash, its subrogees—which have no greater rights than JAL—could not have collected from MDC in the first place.

**2.** As noted *supra*, this claim is now moot.

al discussion of the law of contribution and the law of indemnity will lay a solid framework within which the nuances of the various state laws can be discussed, *infra*.[3]

Contribution and indemnity [4] are similar concepts in that in each instance one party with an actual or potential tort judgment against him seeks to shift all or part of that judgment to another party. The difference between the two is that a party seeking contribution seeks less than 100% of the judgment rendered against him and necessarily admits at least partial culpability for the underlying tort. The party seeking indemnity attempts to shift the entire burden of the judgment upon another party on the ground that that other party is actually or "primarily" responsible for the tort.

At common law the strict rule was that there shall be no contribution among joint tortfeasors. Parties sued and against whom judgment was rendered were jointly and severally liable for the payment of the judgment. Parties not originally sued by plaintiff could not be held liable for any portion of the judgment in a third-party action or any other action instituted by the original defendants. As noted, *infra*, this rule has been changed by statute in various jurisdictions.

■ The courts have developed the concept of "implied indemnity" to cover cases where the "no contribution" rule would reach an unjust result. Though not strictly termed such, implied indemnity is an equitable concept and turns on the degrees of responsibility between the party against whom the original judgment has been rendered and the party against whom indemnity is sought. The right to indemnity is a jury question. The question is often asked whether the party seeking indemnity is guilty only of "passive" negligence while the party against whom indemnity is sought is guilty of "active" negligence. Alternatively phrased, the jury can grant indemni-

ty if it finds that one party was "primarily" liable while the party seeking indemnity was only "secondarily" liable. Indemnity can be awarded if the party seeking it was liable to the plaintiff only because of a non-delegable legal obligation, for example, and not because of any truly negligent action or omission. The question of indemnity involves an essentially equitable inquiry of which party, in good conscience, should ultimately be held responsible for the injury.

■ A defendant may settle with the plaintiff then seek indemnity from a third party. A couple of basic principles govern this indemnity action. First, indemnity will not be granted to a "volunteer". The party seeking indemnity must be liable to the plaintiff—under some theory—before he can recover over from a third party. It is not open to the indemnity plaintiff to argue that he was in no way liable to the tort plaintiff.

■ The basis for the indemnity plaintiff's liability to the tort plaintiff must be found in the tort plaintiff's complaint. Thus in an indemnity action, the underlying complaint must be carefully examined to determine the basis of the settlement, i. e., the theory under which the indemnity plaintiff was liable to the tort plaintiff.

The implications of this last rule to the instant suit is that, in MDC's indemnity actions against JAL, MDC necessarily admits that it was liable to the passenger plaintiffs under one or more of the following theories—after the theories of the complaints in the four passenger actions discussed above are distilled: 1) negligence; 2) strict product liability; or 3) breach of warranty. Since this is a motion to dismiss, the court cannot speculate as to the factual basis of MDC's liability to the passenger plaintiffs. The only question on indemnity is whether, as a matter of law, MDC can be awarded indemnity if, as a matter of law, it

---

**3.** These general principles clearly emerge from a reading of the New York, Illinois and California cases. Specific citations are omitted. *See generally*, 18 Am.Jur.2d, Contribution and 41 Am.Jur.2d, Indemnity.

**4.** Indemnity may arise either from contract or may be implied in law. This case does not involve any question of contractual indemnity.

is liable to the passenger plaintiffs under any one of the above theories. *In essence, MDC has admitted that it supplied a defective product to JAL and that this defect contributed to the accident.*[5]

### 2. Choice of Law—Introduction

The laws of the following jurisdictions could arguably apply to this motion to dismiss the contribution and indemnity claims of MDC:

Soviet Union—situs of the crash;

Japan—domicile of most of the passengers;

New York—domicile of plaintiff Brettler and state where MDC negotiated and effectuated releases and settlements with plaintiffs in New York actions;

Illinois—state in which MDC negotiated and effectuated releases and settlements with plaintiffs in Illinois actions;

California—state where aircraft was designed, tested and built, where Douglas has its principal place of business, and where MDC–JAL business dealings took place;

Federal common law—on the theory that aviation is an area of national concern requiring the application of a single set of rules to effect federal aviation policy.

Neither of the parties would apply the laws of Japan or the Soviet Union. JAL argues for the application of New York and Illinois law. MDC asks the court to apply California law, or, in the alternative, to apply federal common law.

Preliminarily, the court rejects the application of "federal common law." This court only has diversity jurisdiction over the instant suit. After the Supreme Court's decision in *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), MDC surely has an almost insuperable burden to prove that any federal common law, rather than the appropriate state law, should apply.

MDC cites only *Kohr v. Allegheny Airlines, Inc.,* 504 F.2d 400 (7th Cir. 1974, *cert. denied sub nom. Forth Corp. v. Allegheny Airlines, Inc.,* 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975), for the proposition that this court should apply federal common law. That case involved a plane crash over the continental United States. The federal government does, indeed, have an interest in regulating aviation over United States territory. But even if *Kohr* is correctly decided, the holding in that case has no application to this action which involves the crash of a Japanese aircraft over the Soviet Union. The court sees no reason to depart from *Erie's* mandate to apply state law to the instant case. *See Quadrini v. Sikorsky Aircraft Division,* 425 F.Supp. 81, 84–85 (D.Conn.1977).

The law of New York, Illinois or California governs this action. In order to determine whether the laws of these three jurisdictions conflict, thus requiring the court to make a choice of law, the separate laws of these three jurisdictions will now be examined.

### 3. New York Law on Contribution and Indemnity

Any discussion of New York law on the subject of contribution and indemnity must begin with *Dole v. Dow,* 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972), which broke with the traditional common law contribution rule and allowed a defendant to bring in a third party who might be liable for part or all of plaintiff's potential claim against the defendant. Prior to *Dole v. Dow,* the defendant could only get contribution if the *plaintiff* brought in the third party as a co-defendant.

The court allowed the defendant to bring in the third party and allowed damages to be apportioned based on the relative fault of the parties. In so doing, the court criticized the traditional indemnity concept.

---

**5.** MDC asserts that a jury could hold MDC liable for negligence and still find that the plane was not defective. This would appear to be an inconsistent finding, and the court is not required to imagine what an actual, and perhaps an irrational, jury might do. The point is that if a rational jury found MDC liable on the basis of the complaint as it is framed, MDC could only be held liable if the plane were defective in design or construction.

Prior to *Dole v. Dow,* a defendant could bring in a third party only on an indemnity theory. If the defendant could prove that the third party was "primarily" or "actively" liable whereas the defendant was only "secondarily" or "passively" liable, then the third party would be liable for the *full amount* of plaintiff's judgment against the defendant.

In the course of its opinion, the court suggested that the traditional indemnity concept arose in the context of the strict common law rule against contribution. The indemnity rule, as it developed, was an attempt by the courts to ameliorate injustice by placing liability on the party which was significantly more at fault for the injury. 331 N.Y.S.2d at 387–89, 282 N.E.2d 288.

*Dole v. Dow* did not eliminate claims for indemnity. It merely *narrowed* causes of action based on indemnity to cases where the defendant claiming indemnity was liable to the plaintiff only vicariously, or as a matter of law, as opposed to actually contributing to the injury.

A later Court of Appeals case, *Rogers v. Dorchester Associates,* 32 N.Y.2d 553, 347 N.Y.S.2d 22, 32 (1973) clarified *Dole v. Dow:*

[*Dole v. Dow* ] was hardly intended to overturn basic and satisfactory principles of common-law indemnification between vicariously liable tort-feasors and tort-feasors guilty of the acts or omissions causing the harm. In short, the apportionment rule [of *Dole v. Dow* ] applies to those who in fact share responsibility for causing the accident or harm, and does not extend further to those who are only vicariously liable, as the employer of a negligent employee, the *owner of a motor* vehicle operated by a negligent driver or, as here, the owner of a building who contracts with an independent contractor exclusively responsible for maintenance of the building or parts of it.

To the same effect is *Kelly v. Diesel Construction Division,* 35 N.Y.2d 1, 358 N.Y. S.2d 685, 689 (1974).[6]

MDC's claim for contribution is barred by N.Y. General Obligations Law § 15–108(c), which reads:

(c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.[7]

However, MDC's claim under common law indemnity is not affected by § 15–108(c). *Rock v. Reed-Prentice Division,* 39 N.Y.2d 34, 382 N.Y.S.2d 720, 721 (1976); *State v. County of Sullivan,* 54 A.D.2d 29, 386 N.Y. S.2d 253 (App.Div.3d Dept. 1976). We now turn to MDC's indemnity claim under New York law.

As a necessary condition of its settlement with plaintiffs, *MDC,* as previously noted, has admitted that the aircraft was defective when it was sold to JAL and that this defect was at least a contributing cause of the accident. MDC's theory of indemnity is that JAL is primarily liable because JAL

---

**6.** In *Kelly,* at 689, the court held:

[U]nder familiar common-law principles, full indemnification can be recovered from the actor who caused the accident (the active tortfeasor), and, where the cause is shared, contribution under the *Dole-Dow* doctrine.

The court went on to define what was meant by "active tort-feasor":

Before leaving the subject it would be useful to observe that the inevitable limited accuracy of terminology has caused much of the trouble in this area of the law. In the first instance, the extension of the active-passive terminology from the rules governing active tort-feasors, who were liable to those only vicariously liable for the harm done by the active tort-feasors, caused immeasurable trouble in this State. Thanks to *Dole v. Dow Chem. Co.* that unwise extension has been properly laid to rest. . . .

In classic and correct terminology, the one who should pay ultimately for his actual fault is primarily liable. The one who must pay because of first instance liability to third parties but who ought to be able to recover from one guilty of actual fault, is secondarily liable. 358 N.Y.S.2d at 689–90 (citations omitted).

**7.** JAL suggests another basis under which MDC's claim for contribution under New York law must be dismissed. JAL asserts that it also has settled all of plaintiffs' claims against JAL and obtained releases. Under G.O.L. § 15–108(b), MDC would be prevented from obtaining contribution from JAL if this were true. MDC disputes that JAL has obtained valid releases, however. The court need not reach this question since MDC's claim for contribution is precluded by subsection (c) of § 15–108.

wrongly activated the spoilers knowing that they were not to be activated while the plane was in flight.

The court views this state of facts as the classic case where two parties have jointly contributed to a single injury. Any claim that MDC may have against JAL is one for contribution between joint tort-feasors and not indemnity under New York law. Clearly, MDC has admitted that its acts or omissions were a cause of the injury; "but for" the condition of the aircraft the accident would have never occurred even if JAL was negligent in operating the aircraft. MDC, under the facts of this case, could not be vicariously liable to plaintiffs because of the acts of JAL. MDC is liable to plaintiffs because of its own acts or omissions in designing or constructing the aircraft.

Pre-*Dole v. Dow* cases have suggested that the manufacturer of a defective product can collect indemnity. *Goldstein v. Compudyne Corp.*, 45 F.R.D. 467, 469 (S.D. N.Y.1968); *Stahlberg v. Hannifin Corp.*, 157 F.Supp. 290 (N.D.N.Y.1957); *Lane v. Celanese Corp. of America*, 94 F.Supp. 528 (N.D. N.Y.1950). This court concludes that those cases have been effectively overruled by *Dole v. Dow, Rogers* and *Kelly* which have narrowed the bases for indemnity claims.

The court has found no post-*Dole v. Dow* cases in which the manufacturer of a defective product has sought indemnity from the purchaser of that product. However, New York cases do suggest, by analogy, that indemnity cannot possibly lie. Other jurisdictions have directly decided the issue.

In *Rock v. Reed-Prentice Division, supra*, the manufacturer of a plastic molding machine brought a third-party action against the plaintiff's employer for contribution. The jury found that the machine was defective and that the manufacturer was negligent. In upholding the manufacturer's claim for *contribution* the court said, in dictum, that *indemnity* could not lie because the jury had found that the machine was negligently manufactured. The court explained:

> [W]hen . . . the party seeking indemnification [is] himself partially at fault, the courts of this State, and

throughout the Nation generally, refuse[] to imply a right to partial indemnification against 'another who played an effective role in causing the damage.' 382 N.Y.S. at 722 (citations omitted).

In *Walsh v. Ford Motor Company*, 70 Misc.2d 1031, 335 N.Y.S.2d 110, 113 (Sup.Ct. Nassau Co. 1972) the court held that the manufacturer of a defective carburetor was 75% liable and the car dealer was 25% liable due to its failure to inspect the carburetor. *Guarnieri v. Kewanee-Ross Corp.*, 270 F.2d 575, 579 (2d Cir. 1959), applying New York law, held that where the complaint alleges that the defendant manufactured a defective boiler which injured the plaintiff, this negligence could only be regarded as active, and an indemnity claim of the manufacturer based on passive negligence must be dismissed.

Analogously the Illinois courts, faced squarely with the question whether the manufacturer of a defective product can claim indemnity from another, has held that it cannot as a matter of law. *Burke v. Sky Climber, Inc.*, 13 Ill.App.3d 498, 301 N.E.2d 41 (1st Dist. 1973), *aff'd*, 57 Ill.2d 542, 316 N.E.2d 516 (Ill.1974); *Robinson v. International Harvester Co.*, 44 Ill.App.3d 439, 3 Ill.Dec. 150, 358 N.E.2d 17 (5th Dist. 1976); *Stevens v. Silver Manufacturing Co.*, 41 Ill. App.3d 483, 355 N.E.2d 145 (2d Dist. 1976).

Although California indemnity law has recently been changed, a California court, using the traditional active/passive concept of indemnity which was the California law at that time and is the New York law now, also held that in a fact situation analogous to the instant case indemnity would not lie down the chain of distribution. *Bill Loeper Ford v. Hites*, 47 Cal.App.3d 828, 121 Cal. Rptr. 131 (2d Dist. 1975).

Accordingly, this court holds that under New York law, MDC has no indemnity claim against JAL because, as a matter of law, MDC's fault was, at least in part, a cause of the accident.

4. *Illinois Law on Contribution and Indemnity*

■ Illinois follows the common law rule that there is no contribution among joint

tortfeasors. *Carver v. Grossman,* 55 Ill.2d 507, 305 N.E.2d 161 (Ill.1973). Nor would the Illinois courts allow an indemnity claim under the facts of this case. *Burke v. Sky Climber, Inc., supra; Robinson v. International Harvester Co., supra; Stevens v. Silver Manufacturing Co., supra.*

5. *California Law on Contribution and Indemnity*

The California Supreme Court has recently decided *American Motorcycle Association v. Superior Court,* 20 Cal.3d 578, 146 Cal. Rptr. 182, 578 P.2d 899 (1978). The court followed the outlines of *Dole v. Dow* and instituted a scheme of comparative negligence and contribution based on the degree of fault among joint tortfeasors. However, the California terminology differs from that of New York in an important respect.

*American Motorcycle* allows an action for "partial equitable indemnity" to be maintained between joint tortfeasors. The holding in the case was that the named defendant could file a cross-complaint and implead a third-party who might be liable for all or part of plaintiff's judgment. The court did, however, deal in dictum with the issue of partial indemnity after a party seeking indemnity had settled with the plaintiff.

In *Ford Motor Co. v. Robert J. Poeschl, Inc.,* 21 Cal.App.3d 694, 98 Cal.Rptr. 702 (App.Ct.3d Dist. 1971), plaintiff customer sued the manufacturer and dealer of his automobile. The customer settled with Ford and Ford sued the dealer for indemnity after the dealer had refused to contribute any money to the settlement. The *Poeschl* court dismissed the indemnity claim on the ground that, based on traditional primary/secondary indemnity concepts, indemnity would not lie in favor of the manufacturer of a defective product.

The court in *American Motorcycle* endorsed *Poeschl's* dissatisfaction with existing indemnity law. The clear implication to be drawn from the California Supreme Court's discussion is that comparative indemnity *will* lie in favor of the manufacturer of a defective product which has settled with plaintiff.

The court also discussed the existing California contribution statutes holding that they did not preclude this new rule of indemnity. The court further added that the new policy of partial indemnity would encourage the settlement of lawsuits pursuant to the policy of the statutory scheme. This court notes that allowing a settling party to pursue a claim for partial indemnity would also encourage the settlement of lawsuits, at least between the injured plaintiff and the defendants. The New York statute, G.O.L. § 15–108(c), which forbids a settling party to claim contribution has been termed a "questionable legislative judgment." Joseph M. McLaughlin, Practice Commentary, McKinney's Consolidated Laws of New York, G.O.L. § 15–108, p. 719.

One final point with respect to *American Motorcycle* merits discussion. That case, which appears to have significantly changed California law on the question of comparative indemnity, was decided *after* MDC had already settled with plaintiffs. Therefore, the issue is whether *American Motorcycle* should be applied retroactively to these settlements or whether prior California law should govern the relationship between MDC and JAL.

The New York Court of Appeals, without any significant analysis of the issue, held that *Dole v. Dow* would *not* be applied to settlements entered into before *Dole v. Dow* was decided. *Codling v. Paglia,* 32 N.Y.2d 330, 345 N.Y.S.2d 461, 471 (1973). However, *Dole v. Dow* is not necessarily an indication of how the California Supreme Court would rule on the retroactivity question.

The court in *American Motorcycle* was clearly motivated by the notion that all parties liable for plaintiff's injury should, in fairness, bear their proportionate share of the damages. The court rejected prior California indemnity law saying:

[T]he all-or-nothing aspect of the [prior indemnity] doctrine has precluded courts from reaching a just solution in the great majority of cases in which equity and fairness call for an apportionment of loss

between the wrongdoers in proportion to their relative culpability, rather than the imposition of the entire loss upon one or the other tortfeasor.

146 Cal.Rptr. at 193, 578 P.2d at 910.

This court believes that precisely the same principles of equity and fairness would lead the California Supreme Court to require retroactive application of *American Motorcycle unless* there are countervailing considerations.

JAL argues that, since MDC relied on *pre-American Motorcycle* law when it settled with plaintiffs, MDC should not now be allowed to take advantage of a fortuitous change in the law. This argument would have merit if MDC and JAL jointly relied on *pre-American Motorcycle* law. But it appears that only MDC so relied. JAL suggests, without elucidating, that it would be unfair to apply *American Motorcycle* after JAL had made its own payments to plaintiffs. The court rejects this contention since it does not appear that JAL relied on California law in entering these settlements.[8]

In conclusion, this court holds that prior California law has been changed by *American Motorcycle*. In the case of a defective product California would now allow partial indemnity to be awarded to a settling tortfeasor from a joint tortfeasor further down the chain of distribution.

Since there is a conflict between the laws of New York and Illinois and the law of California, we now turn to the question of which law is applicable to the instant case.

6. *Choice of Law*

This court, exercising only diversity jurisdiction, must apply the choice of law rules of the forum state, New York. *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon v. Stentor,* 313 U.S. 487, 61 S.Ct. 734, 84 L.Ed. 1115 (1941). New York's choice of law rule was succinctly stated in *J. Zeevi & Sons, Ltd. v. Grindlays Bank (Uganda),* 37 N.Y.2d 220, 371 N.Y.S.2d 892, 898, *cert. denied,* 423 U.S. 866, 96 S.Ct. 126, 46 L.Ed.2d 95 (1975). (citation omitted):

[T]he rule which has evolved clearly in our most recent decisions is that the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.

The starting point in this analysis is the fact that the rights of only JAL and MDC are here at issue. All passenger plaintiffs have settled. Their claims are no longer at issue in any way. Thus, any "contacts" relevant to the choice of law question and any policies to be furthered by choosing one law over another must pertain only to JAL and MDC. *See, e. g. Murphy v. Barron,* 45 Misc.2d 905, 258 N.Y.S.2d 139, 142 (Sup.Ct.Kings Co.1965).

New York has no strong interest in the question of whether JAL is liable to MDC for contribution. The only contacts that these suits have with New York, aside from the fortuitous circumstance that venue is here, is that one passenger plaintiff was a New York resident and that certain settlement negotiations and payments were made in New York with the New York and Japanese plaintiffs.

That fact that one plaintiff was a New York resident has no relevance to the rights of MDC vis-a-vis JAL. Furthermore, it is not true, as JAL claims, that the New York rule is that the law to be applied is that of the state in which the claim for indemnity arose—i. e. where payment was made. JAL cites *Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co.,* 372 F.2d 18, 20 (3d Cir. 1966), *cert. denied,* 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967). That case dealt with the correct statute of limitations to be applied and not the more general choice of law question. More importantly, the New York courts have clearly rejected any mechanical formulation which would, for example, make the choice of law contingent on the place of payment. *Bab-*

---

**8.** Code Civil Procedure, §§ 875, et seq.

*cock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 747–49, 191 N.E.2d 279, 281–283 (1963).

Nor has Illinois any strong interest in the contribution and indemnity questions. It is in the same position as New York since the settlement with the Illinois passenger plaintiffs occurred in Illinois.

MDC's and JAL's contacts with California are extensive.

MDC is a Maryland corporation with its principal place of ·business in California. JAL is a Japanese corporation. The contract between the parties relating to the purchase and sale of the aircraft was executed in California and, indeed, explicitly provides that California law shall apply to the construction and performance of the contract. The aircraft was built in California as well as designed and tested there.

Contribution and indemnity law is designed to assure fairness in the allocation of liability between joint tortfeasors and those who are actually at fault as opposed to being only vicariously liable. The rules governing these concepts directly affect the behavior of the parties. In this case, MDC would theoretically take greater or less care in the construction of the aircraft depending on the laws relating to contribution and indemnity.

California has a clear interest in assuring that one of its major corporations has the remedy, in *American Motorcycle's* terminology, of partial indemnity. California also has a clear interest in regulating MDC's conduct in building safe aircraft. Of course, the building of safe aircraft must surely be of equal concern to every state in the Union. But in the instant case, that concern, when added to the numerous contacts that the parties had with California, leads this court to conclude that the law of California, and not the law of New York or Illinois, must govern MDC's claims for indemnity and contribution.

### Summary

JAL's motion to dismiss MDC's claims for indemnity and contribution is denied.

A pretrial conference will be held on August 18, 1978, for the purpose of setting a deadline for the filing of pretrial memoranda and proposed pretrial orders and for the purpose of setting a firm trial date.

See order filed with this opinion.