### EASTERN REFRACTORIES COMPANY, INC., Plaintiff,

v.

### FORTY EIGHT INSULATIONS, INC., Fibrex, Inc., Minnesota Mining and Manufacturing Company and Aycock, Inc., Defendants.

No. 86 Civ. 1585 (WCC).

United States District Court, S.D. New York.

April 13, 1987.

---

Parker Chapin Flattau & Klimpl, New York City (Martin G. Bunin, of counsel), Degonge, Garrity & Fitzpatrick, Bloomfield, N.J., for plaintiff.

McDermott, Will & Emery, Chicago, Ill. (James E. Betke, of counsel), MacCartney & MacCartney, Nyack, N.Y. (Harold Mac-Cartney, of counsel), Burke and Smith Chartered, Chicago, Ill. (Ellen G. Robinson, of counsel), for defendant Fibrex, Inc.

Cowan, Liebowitz & Latman, P.C., New York City, for defendant Minnesota Mining

and Mfg. Co.; Michael F. Maschio, Elliot M. Schachner, of counsel.

Belair Klein Groman & Evans, New York City, for defendant Aycock, Inc.; Paul I. Klein, of counsel.

## OPINION AND ORDER

### WILLIAM C. CONNER, District Judge.

Defendant Minnesota Mining and Manufacturing Company ("3M") has moved pursuant to Rule 12, Fed.R.Civ.P., for an order dismissing the complaint of plaintiff Eastern Refractories Company, Inc. For the reasons outlined below, defendant's motion to dismiss is granted with respect to plaintiff's claim for breach of warranty, but is denied with respect to the remaining four claims.

*Background*

On October 1, 1981, Eastern Refractories Company, Inc. ("ERCO") contracted with BBC–Brown Boveri Inc. ("BBC") to provide thermal insulation material to insulate certain piping at a steam turbine generating station at the Seminole Electric Power Station under construction by BBC in Palatka, Florida. The insulation was ordered by ERCO from Forty-Eight (whose successor is Fibrex), which manufactured it using an adhesive known as Scotch Grip Brand Industrial Adhesive No. 871 (the "adhesive"). Following manufacture, Forty-Eight delivered the product to Palatka, Florida. The adhesive was manufactured and marketed by 3M and sold to West Side Industrial Supply, Inc. ("West") for resale to the public. The adhesive used by Forty-Eight in the manufacture of the insulation was purchased from West and supplied by it to Forty-Eight. The insulation manufactured by Forty-Eight was installed at the construction site in Florida by defendant Aycock, its agents, servants and employees.

In March 1983, upon the start-up of the steam turbine, the insulation failed, resulting in fires causing extensive damage and giving rise to a claim by BBC against ERCO. Pursuant to the contract between ERCO and BBC, all claims and controversies were to be resolved by arbitration in New York. In 1983, BBC commenced an arbitration proceeding against ERCO and on November 18, 1985 the arbitrators issued an award against ERCO which was confirmed by this Court in the sum of $687,088.30 plus interest and costs.

The judgment was entered on December 23, 1985. On February 5, 1986, ERCO and BBC entered into an agreement pusuant to which ERCO paid BBC $702,437.58 in full satisfaction of the judgment in exchange for an assignment of all of BBC's rights against defendants to recover damages arising from the manufacture, sale, distribution and installation of the insulation, including its component adhesive and parts.

Plaintiff in this action, in a five-count complaint, alleges that the adhesive manufactured by 3M and supplied to Forty-Eight (whose successor is Fibrex) and installed by Aycock was defective and dangerous, and resulted in product failure and fires, causing extensive damages to BBC. Three of the five counts of plaintiff's complaint are based on the claims assigned by BBC to plaintiff. These claims are based on (1) strict liability; (2) negligence; and (3) breach of warranty. The fourth count of the complaint seeks indemnification from defendants for the sum paid by plaintiff to BBC in satisfaction of the judgment, and the fifth count seeks contribution from defendants for this sum. Defendant 3M has moved to dismiss, pursuant to Rule 12(b)(6) on the grounds that each of the five counts of plaintiff's complaint fails to state a claim against 3M upon which relief can be granted.

*Discussion*

*Choice of Law*

Historically, choice-of-law conflicts in tort actions have been resolved by applying the law of the place of the wrong. In *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (Ct.App. 1963), the New York Court of Appeals departed from the traditional doctrine and refused to apply the rule of *lex loci delicti* to determine the availability of relief for commission of a tort. In doing so, the Court applied New York law to an action involving New York parties in which recov-

ery was sought for injuries received in an automobile accident in Ontario, Canada. Ontario's guest statute would have barred recovery by the plaintiff passenger but the court refused to apply Ontario law in the New York action, holding that "controlling effect" must be given "to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation" *Babcock v. Jackson,* 12 N.Y.2d at 481, 240 N.Y.S.2d 743, 191 N.E.2d 279.

Subsequent cases in New York have followed the decision in *Babcock* and held that "[t]he law of the jurisdiction having the greatest interest in the litigation will be applied and ... the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Miller v. Miller,* 22 N.Y.2d 12, at pp. 15–16, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968); *see also Tooker v. Lopez,* 24 N.Y.2d 569, at 576–77, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969); *Macey v. Rozbicki,* 18 N.Y.2d 289, at pp. 296–97, 274 N.Y.S.2d 591, 221 N.E.2d 380 (1966). "Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Schultz v. Boy Scouts of America, Inc.* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 95, 480 N.E.2d 679 (Ct.App.1985) *citing Tooker v. Lopez, supra,* and *Neumeier v. Kuehner supra.*

In the present case, the tort took place in Florida, which has a very substantial interest in assuring that all victims of accidents occurring in that state are treated equally by having Florida law apply to their claims. Moreover, there are no contacts between this case and the State of New York which would justify applying New York law. Plaintiff is a Massachusetts corporation and has its principal place of business there. Forty-Eight is an Illinois corporation with its principal place of business in that state. Fibrex is a Delaware corporation having its principal place of business in Illinois. 3M is a Delaware corporation whose principal place of business is in Minnesota. Aycock is a Pennsylvania corporation with its principal place of business

in that state. BBC, the assignor of plaintiff's claims, is a Delaware corporation having its principal place of business in New Jersey.

The only contact this case has with New York is that New York is the forum for this claim and for a prior, related action. Yet these contacts, by themselves, are an insufficient basis for applying New York law, as seen in *Tokio Marine & Fire Insurance Company, Ltd.,* 465 F.Supp. 790 (S.D.N.Y.1978), *aff'd on other grounds* 617 F.2d 936 (2d Cir.1980). In *Tokio,* the representative of a passenger killed in an airline accident brought a wrongful death action in the Southern District of New York against an airplane manufacturer, who impleaded the airline, seeking contribution for any monies paid by the manufacturer to the passenger's representative. The manufacturer then settled with the passenger's representative in New York, but continued its action for contribution, seeking part of the monies it paid pursuant to the settlement agreement. The court refused to apply New York law to the contribution claim, holding that the contacts with New York—as the forum for the litigation and the place where some of the settlement negotiations and payments were made—did not constitute a sufficient basis for applying New York law. *Id.* 465 F.Supp. at 799–800. In reaching this holding the court described New York's contact as the forum for the litigation as "fortuitous." *Id.* at 799.

Accordingly, under choice-of-law principles articulated by New York courts in *Babcock* through, most recently, *Tokio* and *Schultz,* the laws of the state of Florida apply to all of the claims in this action.

### Res Judicata Issue

■ Defendant 3M has argued that plaintiff is barred from receiving relief for the first three counts of the complaint under the doctrine of res judicata. According to 3M, since BBC has already obtained a judgment for the damages it sustained as a result of the incident, under the doctrine of res judicata BBC's claims merged into the judgment, thereby precluding BBC and

plaintiff, as BBC's assignee, from bringing additional claims against 3M for damages arising from the March 1983 incident.

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In this case, the final judgment which 3M seeks to use was the result of an arbitration proceeding at which the impleading of 3M and other defendants was not possible.

Accordingly, the claims against 3M could not have been raised in that action, and so are not barred by the doctrine of res judicata in this action.

*Breach of Warranty*

■ Defendant 3M asserts that plaintiff's breach of warranty claim must be dismissed since 3M was not in privity with BBC, plaintiff's assignor, as required under Florida law. The Florida Supreme Court had announced in the leading products liability case of *West v. Caterpillar Tractor Co.,* 336 So.2d 80 (Fla.1976) that breach of implied warranty is "an action in contract," *Id.* at 88, which henceforth requires a showing of contractual privity between the plaintiff and the defendant as an essential element of the action. In *West,* the court adopted the doctrine of strict liability in tort, in the form of Section 402A of the Restatement (Second) of Torts (1965), and, by so doing, fundamentally altered the pre-*West* law on breach of implied warranty. *Affiliates for Evaluation v. Viasyn Corp.,* 500 So.2d 688 (Fla.App. 3 Dist.1987). The court in *West* stated:

"The adoption of the doctrine of strict liability in tort does not result in the demise of implied warranty. If a user is injured by a defective product, but the circumstances do not create a contractual relationship with a manufacturer, then the vehicle for recovery could be strict liability in tort. If there is a contractual relationship with the manufacturer, the vehicle of implied warranty remains."
*West,* 336 So.2d at 91.

As noted in *Affiliates for Evaluation v. Viasyn Corp.,* 500 So.2d at 692, both the Second and Fourth District Courts of Appeal in Florida have impliedly recognized that privity of contract is now an essential element of a breach of implied warranty action. *See Continental Ins. Co. v. Montella,* 427 So.2d 796 (Fla. 4th DCA 1983); *Navajo Circle, Inc. v. Development Concepts Corp.,* 373 So.2d 689, 692 n. 3 (Fla. 2d DCA 1979).

Plaintiff in this case argues, however, that *West* leaves the law of breach of implied warranty completely intact so that all pre-*West* implied warranty cases—such as *Hoskins v. Jackson Grain Co.,* 63 So.2d 514 (Fla.1953), upon which plaintiff relies—are still good law. This is the same argument which was advanced and rejected in *Affiliates for Evaluation.* In that case, the Court held that

the *West* court fundamentally altered products liability law in Florida by creating a new products liability tort action—strict liability in tort—out of the prior breach of implied warranty cases which had done away with privity of contract. In so doing, *West* necessarily swept away such no-privity, breach of implied warranty cases in favor of the new action of strict liability in tort. Stated differently, the doctrine of strict liability in tort supplants all no-privity, breach of implied warranty cases, because it was, in effect, created out of these cases. This groundbreaking holding, however, did not result in the demise of the contract action of breach of implied warranty, as that action remains, said the *West* court, where privity of contract is shown.

*Affiliates for Evaluation,* 500 So.2d at 692.

Accordingly, as in *Affiliates for Evaluation,* the Court rejects plaintiff's contention that *West* did not alter the requirements for maintaining an action for breach of implied warranty, and dismisses plaintiff's breach of warranty claim due to lack of privity between plaintiff and defendant 3M.

### Strict Liability and Negligence

Defendant 3M maintains that plaintiff may recover damages under the doctrines of strict liability and negligence only to the extent that those damages were the result of personal injuries or property damage. According to 3M, plaintiff may not recover damages simply for economic losses it sustained.

In *GAF Corp. v. Zack Co.*, 445 So.2d 350 (Fla.App. 3 Dist.1984), the Florida Court of Appeals held that a products liability action sounding in negligence does not lie against the manufacturer of an alleged defective product where the plaintiff consumer suffers no personal injury or property damages from the said product and claims purely economic losses from use of the product. In that case, a plaintiff roofing contractor purchased from a third party retailer certain allegedly defective roofing materials produced by a defendant manufacturer; the plaintiff roofing contractor used these defective materials to install roofs for two of his customers; the customers, in turn, sued and collected damages from the plaintiff roofing contractor for installing a defective roof. The plaintiff roofing contractor then sued the defendant manufacturer in a products liability action sounding in negligence, claiming that he had suffered the above economic damages, along with attorney's fees and costs in the aforesaid suits, as a result of using the defendant's defective roofing materials. The court held that

"A negligence action against the defendant GAF cannot lie herein because no cognizable tort damages were sustained by the plaintiff, Zack, *see McIntyre v. McCloud*, 334 So.2d 171, 172 (Fla.3d DCA 1976); stated differently, no personal injury or property damage was sustained by the plaintiff Zack as a result of its purchase and installation of the defective roofing materials maunfactured by the defendant GAF and therefore no negligence action is maintainable herein."
*GAF Corp.*, 445 So.2d at 351–52.

In the case at bar, ERCO will be entitled to bring all claims based on strict liability and negligence theories, but only to the extent that ERCO, or BBC, from whom ERCO received an assignment of claims against 3M, suffered property damage. ERCO may not raise claims under these theories to recover for purely economic losses it sustained.

### Indemnification

 3M argues that ERCO has not properly pled a cause of action for indemnification under Florida state practice. It is well-settled, however, that in federal court the sufficiency of ERCO's pleading must be determined solely by Rule 8, Fed.R. Civ.P., and not by Florida state court practice. The manner and details of pleading in the federal courts are governed by the Federal Rules of Civil Procedure regardless of the source of substantive law to be applied in the particular action. 5 Wright & Miller, *Federal Practice and Procedure* § 1204 at 71–72. Rule 8 requires only that the pleadings in a federal action indicate that if the allegations in the complaint are established, the pleader is entitled to relief under the substantive law of the jurisdiction. *Id.* at 73.

Under Florida law,

when a manufacturer of a finished product is held strictly liable for damages caused to a third person by a defective component part that was purchased from a supplier and integrated in the finished product, the said manufacturer is entitled to recover indemnity from the party supplying the defective component part, *provided the manufacturer was not himself negligent in either creating or failing to discover the defect.*

*Rowland Truck Equipment v. Everwear Products*, 468 So.2d 393, 394 (Fla.App. 1985) (emphasis in original).

 In determining whether or not a party is entitled to indemnification, the Florida courts apply a "passive negligence" —"active negligence" distinction. *Houdaille Industries, Inc. v. Edwards*, 374 So.2d 490, 493 (Fla.1979); *Florida Power Corporation v. Taylor*, 332 So.2d 687, 690 (Fla.Dist.Ct.App.1976). Thus, the mere failure to discover an unsafe or dangerous condition created by a joint tortfeasor constitutes passive negligence and does not

bar indemnity against the tortfeasor whose active or primary negligence created the dangerous condition. *Id.*

Since ERCO has alleged in its complaint enough facts which, if true, would entitle it to indemnity under Florida law, it has satisfied the requirements of Rule 8, Fed.R. Civ.P.. Accordingly, 3M's motion to dismiss the indemnity claim is denied.

*Contribution*

■ 3M's assertion that ERCO has not stated a valid claim for contribution under Florida law is based on the assumption that ERCO's liability to BBC sounded in breach of contract, not in tort. The arbitration award issued in the proceedings between ERCO and BBC, however, contains no findings of fact, conclusions of law, or any other analysis indicating that ERCO's liability to BBC sounded in breach of contract, not in tort.

BBC's ability to force the resolution of its dispute with ERCO before an arbitration panel in New York and thereby prevent ERCO from impleading 3M and the other defendants in that proceeding was caused by the arbitration clause in the contract between BBC and ERCO. The presence of an arbitration clause in a contract, however, does not necessarily mean that all arbitration proceedings held pursuant to that clause involve a breach of contract. It is well-settled that tort disputes are within the scope of an arbitration provision of a contract stating that "[a]ll disputes arising in connection with this agreement shall be finally settled by arbitration." *In the Matter of Arbitration between Jeff Lane and Collidge Abel-Bey*, 50 N.Y.2d 864, 865, 430 N.Y.S.2d 41, 407 N.E.2d 1337 (1980), *aff'g* 70 A.D.2d 838, 418 N.Y.S.2d 25 (1st Dept. 1979). *See also Harris v. Iannaccone*, 107 A.D.2d 429, 487 N.Y.S.2d 562 (1st Dept.) affd., 66 N.Y.2d 727, 496 N.Y.S.2d 998, 487 N.E.2d 908 (1985). In *Paver & Wildfoerster v. Catholic H.S. Ass'n*, 38 N.Y.2d 669, 382 N.Y.S.2d 22, 345 N.E.2d 565 (Ct.App. 1976), the court noted that

> if the claim sought to be arbitrated is substantially related to the subject matter of the substantive agreement ... it will not be barred (from arbitration)

merely because it also would permit recovery in a tort action at law.

. . . .

> It is also evident that a complex of facts in legal analysis may present a facet of contract law, or tort law ... These are legal concerns and legal definitional boundaries which prescribe the mode of judicial dispute determination. These are not the concerns or the boundaries of arbitrational dispute determination.

*Id.*, 38 N.Y.2d 669, 382 N.Y.S.2d at 26, 345 N.E.2d at 569.

It seems clear that BBC's claim against ERCO which was resolved in arbitration included BBC's right to recovery on a tort claim based on the defective and negligent design, manufacture and installation of the insulation and its component adhesive, as well as breaches of warranty by 3M, the other defendants in this action based solely on ERCO's status as supplier of goods. Clearly, then, ERCO may now bring a claim for contribution against 3M based on these tort claims. Accordingly, 3M's motion to dismiss the claim for contribution is denied.

Finally, 3M's claim that ERCO has no contribution claim since the settlement agreement between ERCO and BBC did not discharge 3M is meritless. 3M's argument is based on a provision of the Florida contribution statute, section 768.31(2)(d), which provides:

> A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement.

This statute, however, is inapplicable to the case at bar. The $702,437.58 paid by ERCO to BBC was not paid pursuant to "a settlement with a claimant" as required by the statute. It was paid in full satisfaction of a judgment which confirmed an award issued in an arbitration proceeding between ERCO and BBC. Accordingly, the statute poses no bar to ERCO's contribution claim against 3M.

*Conclusion*

For the reasons outlined above, defendant 3M's motion to dismiss the breach of warranty claim is granted, while its motion to dismiss ERCO's other claims is denied. ERCO's strict liability and negligence claims, however, will be limited to property damage sustained; other economic losses will not be recoverable under these claims.

So ordered.