Gloria **BAKER**, Plaintiff,

v.

**LATHAM SPARROWBUSH ASSOCIATES and Aaron Kozak, Defendants.**

No. 91 Civ. 6673 (CBM).

United States District Court,
S.D. New York.

March 23, 1992.

Leon C. Baker, White Plains, NY, for plaintiff.

Michael Feldberg, New York City, for defendants.

## OPINION

MOTLEY, District Judge.

Defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds of res judicata, the statute of limitations, and failure to state a claim upon which relief may be granted is now before the Court.[1] For the purposes of this motion, the court must accept the facts alleged in the complaint as true and construe all allegations in the light most favorable to Plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974); *Jenkins v. McKeithen*, 395 U.S. 411, 421–

22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404, 416–17 (1969).

## I. Background

The underlying dispute in this litigation involves an apartment complex known as Sparrowbush Apartments ("Sparrowbush") owned by Defendant Latham Sparrowbush Associates ("LSA"). LSA is a limited partnership and Defendant Aaron Kozak is the general partner of LSA. On August 28, 1968, Shaker Estates, Inc., not a party to this litigation, leased Sparrowbush under a long-term blanket lease for a term of twenty-one years and three days, with an option to extend the lease an additional twenty years. On December 31, 1973, Cohoes Industrial Terminal ("CIT"), a New York corporation acting as nominee for Plaintiff, purchased Shaker's interest in the leasehold. The terms of the lease included a provision granting LSA, as landlord, the option to terminate the lease on sixty days notice with payment of a specified sum of money. On December 26, 1984, LSA notified CIT of its exercise of the option to terminate the lease. The next day, Plaintiff informed LSA that the option was invalid under New York's rule against perpetuities.

LSA's exercise of the termination option resulted in a series of lawsuits involving CIT's rights to the leasehold. The present case is the fourth action involving the underlying dispute over the lessee's rights to Sparrowbush. The lengthy procedural history of the related litigation is central to the issues now before the Court.

In January of 1985, Plaintiff first brought suit in Westchester Supreme Court to obtain declaratory relief stating that the termination clause in the lease violated New York's rule against perpetuities (the "Westchester action"). In a decision dated April 16, 1985, the court dismissed Plaintiff's first action for lack of standing. This decision was affirmed on appeal. *Baker v. Latham Sparrowbush Assocs.*, 129 A.D.2d 667, 514 N.Y.S.2d 426 (2d Dept.1987), *app. denied*, 70 N.Y.2d 606, 519 N.Y.S.2d 1030, 514 N.E.2d 388 (1987).

---

1. Plaintiff urges the Court to treat the motion to dismiss under Rule 12(b)(6) as a motion for summary judgment, citing F.R.C.P. 12(b), which provides that when "matters outside the pleading are presented to and not excluded by the court," a motion under F.R.C.P. 12(b)(6) "shall be treated as one for summary judgment and disposed of as provided in Rule 56." The Court declines to do so, as it bases its decision on the facts as alleged in the complaint.

The second related action commenced on February 11, 1985, when LSA brought a lawsuit against CIT in the Supreme Court of the State of New York, Albany County, for specific performance of the termination clause in the lease (the "Albany action"). LSA served CIT by providing service on the Secretary of State pursuant to § 306 of the Business Corporation Law. CIT did not receive process from the Secretary of State, however, because CIT's current address was not on file with the Secretary of State at the time.

The complaint states that Defendants availed themselves of the method of service permitted by § 306 with the knowledge that CIT would not receive service of process because Defendants knew that the Secretary of State did not have the correct address for CIT on file. Defendants allegedly knew CIT's correct address and could have easily served CIT directly. Plaintiff also alleges that Defendants knew that Plaintiff claimed to own the leasehold and that CIT was only her nominee, but nevertheless failed to serve Plaintiff or to join her as a party. Plaintiff admits that CIT did receive actual notice of the Albany action before the time to defend against the action had expired. *Plaintiff's Memorandum of Law* at 22.

CIT defaulted in the Albany action, and Supreme Court Justice Kahn, Albany County, entered an order on April 19, 1985, granting LSA's motion for a default judgment and directing CIT to deliver possession of the premises to LSA. Justice Kahn found that CIT had received actual notice in time to defend against the Albany action. CIT's motion to vacate the default was denied by Justice Kahn on May 21, 1985, on the grounds that the affidavit of merits was executed by Leon Baker, attorney for CIT, rather than by an officer of CIT. Justice Kahn did not reach the question of the validity of LSA's service of process on the Secretary of State.

CIT appealed Justice Kahn's denial of the motion to vacate the default. On October 10, 1985, the Appellate Division, Third Department, held that the affidavit of merits was properly executed because Leon

Baker had personal knowledge of the facts alleged. *Latham Sparrowbush Assocs. v. Cohoes Indus. Term., Inc.*, 114 A.D.2d 584, 494 N.Y.S.2d 195 (3d Dept.1985), *app. dism'd*, 67 N.Y.2d 736, 500 N.Y.S.2d 100, 490 N.E.2d 1226 (1986). The court nevertheless affirmed the denial on the grounds that CIT's failure to keep a current address on file with the Secretary of State was not excusable neglect under CPLR § 5015(a), permitting courts to vacate a default where there is excusable default or lack of jurisdiction. The court also found that because CIT had actual notice of the default in time to defend, no basis to vacate the default existed under CPLR § 317, permitting a party to defend against a default within one year of the date the default was entered if that party did not have actual notice of the action. On February 13, 1986, the New York Court of Appeals denied CIT's appeal from the order denying leave to appeal on the ground that an order refusing to open a default is not final. *Latham Sparrowbush Assocs. v. Cohoes Industrial Terminal, Inc.*, 67 N.Y.2d 736, 500 N.Y.S.2d 100, 490 N.E.2d 1226 (1986).

CIT then brought a motion in the Appellate Division to certify to the New York Court of Appeals the question of whether the failure to keep a current address on file with the Secretary of State is excusable neglect. Defendant brought a cross-motion for an injunction to prevent Plaintiff from bringing further proceedings to vacate the default judgment without first obtaining the consent of the Appellate Division. The Appellate Division denied both motions without opinion.

Justice Kahn appointed a post-judgment receiver on March 27, 1986, at Defendants' request, to take possession of Sparrowbush from CIT. On July 1, 1986, Justice Kahn, also at Defendants' request, ordered the receiver to deliver possession of Sparrowbush to LSA. Sparrowbush has since been in the possession of Defendants.

The third round of litigation involving CIT's rights to Sparrowbush commenced on April 28, 1986, when CIT filed a Chapter 11 petition in United States Bankruptcy Court for the Southern District of New

York (the "Bankruptcy action"). LSA moved pursuant to 11 U.S.C. § 362(d)(1) to lift the automatic stay to enable it to obtain possession of Sparrowbush. CIT cross-moved to have LSA and the receiver in the Albany action held in contempt of court for violating the automatic stay by attempting to enforce the state court judgment, and for an order directing CIT to transfer legal title to the leasehold to Gloria Baker. United States Bankruptcy Judge Schwartzberg granted LSA's motion and denied both of Plaintiff's cross-motions. In a decision dated June 12, 1986, Judge Schwartzberg ruled that the conclusive resolution of CIT's claims in state court were res judicata in any relitigation of the default on the grounds of improper service. *In re Cohoes Industrial Terminal, Inc.*, 62 B.R. 369 (Bankr.S.D.N.Y.1986).

CIT appealed to United States District Court, Southern District of New York, and Chief Judge Brieant affirmed the Bankruptcy Court's decision on February 18, 1987. *In re Cohoes Industrial Terminal, Inc.*, 70 B.R. 214 (S.D.N.Y.1987). Judge Brieant specifically affirmed the Bankruptcy Judge's ruling that the state court proceedings barred CIT from collaterally attacking the Albany default in the Bankruptcy action. The Second Circuit affirmed in an unpublished summary order. *In re Cohoes Industrial Terminal, Inc.*, 831 F.2d 283 (2d Cir.1987). The Second Circuit stated that the leasehold was no longer the property of the estate at the time of filing for purposes of the automatic stay because CIT's property interest in the leasehold had terminated prior to the filing in bankruptcy. The court based its decision on the plain language of the lease, which provided that CIT's interest in Sparrowbush expired on February 25, 1985, sixty days after LSA had given notice of its exercise of the option to terminate the lease. The court did not specifically address CIT's ability to collaterally attack the default in the Bankruptcy action.

LSA then moved for sanctions against CIT, which the Bankruptcy Judge granted. *In re Matter of Cohoes Industrial Terminal, Inc.*, 103 B.R. 480 (Bankr.S.D.N.Y. 1989). Judge Broderick, United States District Judge, Southern District of New York, affirmed the Bankruptcy Court's order granting sanctions against CIT. CIT appealed to the Second Circuit, which reversed the imposition of sanctions on the grounds that CIT's collateral attack of the default in U.S. Bankruptcy Court was not frivolous or sanctionable conduct. *In the Matter of Cohoes Industrial Terminal, Inc.*, 931 F.2d 222 (2d Cir.1991). The court stated that collateral attack was open to CIT because the New York courts had based their denial of the motion to vacate the default on procedural grounds. The Second Circuit also stated that the default judgment was subject to collateral attack in Bankruptcy court as a violation of CIT's due process rights under the Fourteenth Amendment, even though CIT had actual notice in time to defend against the Albany action. *Id.* at 228.

CIT assigned all of its rights with respect to Sparrowbush to Plaintiff on July 27, 1991. Plaintiff commenced the present lawsuit in October of 1991. Plaintiff alleges that Defendants acted unlawfully in obtaining possession of Sparrowbush through the Albany default because § 306, as applied and used by Defendants, was not reasonably calculated to provide CIT with actual notice of the Albany action. Plaintiff challenges the constitutionality of the default judgment and sues for damages and to recover possession of Sparrowbush under 42 U.S.C. 1983 and New York state law.

## II. Discussion

### A. *Res Judicata and Collateral Estoppel*

Under the principle of res judicata, "a valid, final judgment on the merits is a bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand." *N.L.R.B. v. United Tech. Corp.*, 706 F.2d 1254, 1259 (2d Cir.1983). The related, and sometimes overlapping doctrine of collateral estoppel bars the "relitigation of an issue of law or fact that was raised, litigated, and actually

decided by a judgment in a prior proceeding between the parties, if the determination of that issue was essential to the judgment, regardless of whether or not the two proceedings are based on the same claim." *Id.* at 1260.

■ As counsel for Plaintiff pointed out in oral argument, although Defendants' briefs discuss the issue as one of res judicata, technically, the question of whether the prior litigation precludes the present action actually involves the narrower doctrine of collateral estoppel. Res judicata applies where a party attempts to bring a claim and there has already been a final judgment on the merits in prior litigation between the same parties on the same cause of action. The Albany action was brought by Defendants to obtain specific performance of the lease, and the Bankruptcy action involved CIT's petition for reorganization under the bankruptcy laws. The present constitutional claim, on the other hand, arises out of the method of service used to obtain the default judgment in the Albany action. Consequently, the prior litigation involved different causes of action and the issue now before the court is one of collateral estoppel. While res judicata precludes the relitigation of the same cause of action and any claims that could have been litigated in that action, collateral estoppel bars the relitigation of only those issues which were actually litigated in the prior proceeding and were necessary to its outcome.

■ When the tangled web of procedural history in this case is unravelled, one plain fact remains: despite lengthy, tedious and repetitive litigation, there has never been a final determination of the constitutional validity of the default judgment against CIT in the Albany action. None of the state court proceedings actually adjudicated the constitutional issue raised here. The Westchester action was dismissed for lack of standing. In the Albany action, after LSA obtained the default judgment, CIT's motion to vacate the default was denied in the Supreme Court, Albany County, on the procedural grounds that the affidavit in support of the motion was defective. The Ap-

pellate Division ruled that the affidavit was not defective, but nevertheless affirmed based on New York's statutory requirements for vacating a default. The New York Court of Appeals dismissed Plaintiff's appeal on the procedural grounds that the Appellate Division's decision was an unappealable interlocutory order. Consequently, the state court proceedings never adjudicated the constitutionality of a default judgment obtained under the circumstances alleged by Plaintiff here. The Second Circuit's decision reversing the Bankruptcy Judge's imposition of sanctions explicitly recognized that the litigation in the New York courts did not preclude Plaintiff from collaterally attacking the default based on constitutional grounds. *See In the Matter of Cohoes Industrial Terminal, Inc.*, 931 F.2d 222, 228 (2d Cir.1991).

The federal bankruptcy proceedings are more difficult to decipher, but still fall short of a conclusive adjudication of the constitutional issue raised here. Although CIT attempted to collaterally attack the default judgment on the grounds that LSA's method of service was not reasonably designed under the circumstances to apprise CIT of the pending proceedings and was therefore constitutionally defective, the Bankruptcy court did not reach the merits of this issue. Instead, Judge Schwartzberg ruled that Plaintiffs were barred from making this argument by the state court proceedings. On appeal to the District Court, Chief Judge Brieant affirmed, again stating that the state court litigation was res judicata to Plaintiff's collateral attack of the judgment.

The Second Circuit affirmed the District Court's affirmance of the Bankruptcy Court's order declaring that the automatic stay did not apply to Sparrowbush. The Second Circuit stated that CIT did not have a property interest in the leasehold when it filed for bankruptcy because "the plain language of the lease provided that the lease ceased and ended 60 days after LSA exercised the option." *In re Cohoes Industrial Terminal, Inc.*, Docket No. 87–5004 (2d Cir. Sept. 18, 1987). Because the Second Circuit based its decision on the language

of the lease itself, the court did not decide whether the state court litigation precluded CIT from collaterally attacking the default judgment in Bankruptcy Court.[2] More importantly, it is clear that the Second Circuit did not reach the merits of Plaintiff's constitutional challenge to the default.

Since the constitutionality of the method of service used to obtain the Albany default has never been finally adjudicated, Plaintiff is not precluded from raising this issue in the present action.[3]

### B. *Failure to State a Claim Under Rule 12(b)(6)*

#### 1. Plaintiff's Section 1983 Claim

Defendants argue that Plaintiff has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1983. This statute provides that:

> Every person who, under color of any statute ... of any State, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured on an action at law.

To state a § 1983 claim, a plaintiff must allege that the defendant's conduct deprived the plaintiff of a constitutionally protected right and that the conduct causing the deprivation was fairly attributable to the state. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73

L.Ed.2d 482 (1982); *Dahlberg v. Becker*, 748 F.2d 85 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

Plaintiff claims that her fourteenth amendment due process rights were violated by LSA's use of a method of serving process that was not reasonably calculated to apprise CIT of the pending action and that resulted in a default judgment against CIT. Defendants argue that no due process violation occurred because Plaintiff received all the process she was due. Defendants cite *Micarelli v. Regal Apparel, Ltd.*, 52 A.D.2d 524, 381 N.Y.S.2d 511 (1st Dept.1976), which upheld the constitutionality of service of process under B.C.L. § 306. However, Plaintiff does not challenge the constitutionality of § 306 on its face, but as applied to the circumstances in this case. Plaintiff alleges that Defendants delivered process to the Secretary of State knowing that the address on file for CIT was inaccurate and that the probability that CIT would never receive process from the Secretary was extremely high. The constitutionality of § 306 has not been upheld when the statute is invoked under circumstances such as these.

■ Due process requires that a court have personal jurisdiction before rendering a judgment against a defendant. *See Robinson v. Hanrahan*, 409 U.S. 38, 40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972). A court obtains jurisdiction over a defendant only where the method of service is "reasonably

---

**2.** Even if the Second Circuit's order could be interpreted to affirm the Bankruptcy and District Courts' ruling that the state court proceedings precluded Plaintiff's collateral attack, the Second Circuit's 1991 opinion holding that the state court proceedings did not bar such a constitutional challenge controls this Court's determination of the issue. *See* Restatement of Judgments (Second) § 15 ("When in two actions inconsistent final judgments are rendered, it is the later, not the earlier, judgment that is accorded conclusive effect in a third action under the rules of res judicata.").

**3.** Even if the broader rule of res judicata were the appropriate doctrine for analyzing the present case, Plaintiff's constitutional challenge to the default would not be barred. Res judicata precludes the relitigation of a claim, and all claims arising from the same transaction or occurrence whether or not they were actually

raised, where there has been a final judgment on the merits. *See Amalgamated Sugar Co. v. NL Industries, Inc.*, 825 F.2d 634, 639 (2d Cir. 1987), *cert. denied*, 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987); *Colonial Acquisition Partnership v. Colonial at Lynnfield, Inc.*, 697 F.Supp. 714 (S.D.N.Y.1988). The Bankruptcy Court refused to reach the merits of the constitutional claim on the procedural grounds that the prior state court proceedings precluded CIT from collaterally attacking the judgment. Consequently, the Bankruptcy Court's judgment would not have preclusive effect on Plaintiff's constitutional claim here. Similarly, the Albany action is not res judicata to Plaintiff's constitutional challenge because Plaintiff's attempts to vacate the default were denied on procedural grounds. *See In re Matter of Cohoes Industrial Terminal, Inc.*, 931 F.2d 222, 228 (2d Cir.1991).

calculated, under the all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). Where the server of process knows that the defendant cannot be reached at the address where process is sent, service is not "reasonably calculated" to reach the judgment-debtor. *See Robinson v. Hanrahan, supra.* The allegation that Defendants invoked a method of service that they knew was not reasonably calculated to reach CIT sufficiently alleges a deprivation of due process under *Mullane. See Matter of Cohoes Industrial Terminal, Inc.,* 931 F.2d 222, 229 (2d Cir.1991) (noting that CIT had a reasonable basis on which to attack the constitutional validity of the default).

 Defendants argue that Plaintiff's due process rights could not have been violated by the default judgment because CIT had actual notice of the pending action. Defendants allege that notice in this case was delivered to Leon Baker, not a party in the Albany action, and was attached to papers relating to the Westchester action, a collateral proceeding. Although CIT may have received actual notice of the Albany action in this manner, informal notice does not cure a failure of formal process. The distinction between formal service and informal notice is a significant one. When service is made in a manner not reasonably calculated to reach a defendant, the fact that a defendant learns of the proceeding in another way does not render the service constitutionally valid. *See City of New York v. New York, N.H. & H. Ry. Co.,* 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953); *Wuchter v. Pizzuti,* 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928); *Sterling v. Environmental Prot. Bd. of the City of New York,* 793 F.2d 52 (2d Cir.), *reh. denied,* 795 F.2d 8 (1986).

Plaintiff has also sufficiently alleged that the deprivation occurred under color of state law. In order for the defendant's actions to be "under color of state law," the conduct must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744,

2753, 73 L.Ed.2d 482, 495 (1982). The two-pronged fair attribution test established in *Lugar* requires: 1) that the deprivation of rights was caused by the exercise of some right or privilege created by the state; and 2) that the party charged with the deprivation may be fairly said to be a state actor. *Id.* Defendants' conduct satisfies the first prong of the fair attribution test, in that state law created both the underlying right to sue for possession of the property and the method of serving process used by Defendants. Defendants argue that any deprivation was not caused by state-created rights because Plaintiff is not attacking the constitutionality of § 306 itself, but is merely alleging misuse of the statute. Although Plaintiff does not attack the constitutionality of § 306 on its face, the complaint alleges more than mere misuse of a statute by challenging the constitutionality of § 306 as applied to the facts of this case and, therefore, satisfies the first prong of the fair attribution test.

The second prong, that Defendants may fairly be said to be state actors, is also satisfied. A person may fairly be said to be a state actor "because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar,* 457 U.S. at 937–38, 102 S.Ct. at 2753–54. Plaintiff alleges that Defendants invoked a New York statute in compliance with New York law to obtain a judgment against Plaintiff, and obtained significant aid from a court-appointed receiver who enforced the judgment under court order by taking possession of the land and delivering it to Defendants. These allegations involve as much state action as was present in *Lugar.* In *Lugar,* the Court held that a creditor's joint participation with the state in a prejudgment attachment transformed the creditor into a state actor for the purposes of the debtor's § 1983 claims. After the clerk issued the writ of attachment and the county sheriff executed the writ and sequestered the debtor's property in *Lugar,* the debtor obtained a remedy under state law and the state corrected the wrongful attachment. Defendants' conduct impli-

cates the state here also, as the state court appointed a receiver to effectuate a default judgment against CIT even though the court did not have jurisdiction over CIT. Moreover, unlike the state in *Lugar,* in this case the state never restored Plaintiff's property. Plaintiff has sufficiently alleged conduct attributable to the state.[4] *Cf. Tulsa Prof. Collection Servs., Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) (probate court's involvement under "non-claim" statute, which provided for notice by publication not reasonably calculated to apprise creditors of the action, rendered private parties' use of the procedures "state action" for purposes of fourteenth amendment due process claim); *Texaco, Inc. v. Pennzoil Co.,* 784 F.2d 1133 (2d Cir.1986) (holding that a judgment-creditor's use of post-judgment attachment was state action), *rev'd on other grounds,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

### 2. Plaintiff's State Law Claims

In Plaintiff's brief on the motion to dismiss, Plaintiff argues that the complaint contains five causes of action under New York state law in addition to the four causes of action under 42 U.S.C. 1983. Plaintiff claims that its first state law action is an action to recover the Sparrowbush leasehold. Plaintiff's second state law action is purportedly an action for damages for breach of contract for the period during which Plaintiff was deprived of possession of the leasehold. Plaintiff claims that its third state law action, an alternative to the first two state law actions, seeks damages for the reasonable value of the leasehold at the time it was terminated in the event that Plaintiff cannot recover the leasehold. Plaintiff's fourth state law claim is allegedly an action for unjust enrichment resulting from CIT's payment of $735,715.00 to Defendants pursuant to an order by the Bankruptcy Court for repairs to Sparrowbush which Defendants allegedly failed to make. Plaintiff's fifth state law action is for wrongful eviction under § 853 of the New York Real Property Actions and Proceedings Law.

With the exception of the action for wrongful eviction under § 853, no state law claims are mentioned in the complaint. Plaintiff's state law claims one through four appear for the first time in Plaintiff's brief opposing Defendant's motion to dismiss. Defendants argue that these ´claims must be dismissed because they are not fairly alleged in the complaint.

 All pleadings in federal court are governed by the Federal Rules of Civil Procedure, even where the underlying claim is based on state substantive law. *See Eastern Refractories Co. v. Forty Eight Insulations, Inc.,* 658 F.Supp. 197 (S.D.N.Y.1987). Under the Federal Rules, a plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a). Federal pleading is by statement of claim upon which relief may be based rather than by legal theory. *See Newman v. Silver,* 713 F.2d 14, 15 n. 1 (2d Cir.1983); *Avnet, Inc. v. American Motorists Ins. Co.,* 115 F.R.D. 588 (S.D.N.Y.1987). Plaintiffs need only plead facts showing entitlement to relief, *see Herzog & Straus v. GRT Corp.,* 553 F.2d 789, 791 n. 2 (2d Cir.1977), and are not required to specify the legal theory upon which the claim is based. *See Albert v. Carovano,* 851 F.2d 561, 571 n. 3 (2d Cir.1988); *Siegelman v. Cunard White Star, Ltd.,* 221 F.2d 189, 196 (2d Cir.1955); *Rokus v. American Broadcasting Co., Inc.,* 616 F.Supp. 110, 112 (S.D.N.Y.1984); *Speed Auto Sales, Inc. v. American Motors Corp.,* 477 F.Supp. 1193, 1198 (E.D.N.Y.1979).

 Nevertheless, the statement of the claim must contain enough specificity to provide defendants with fair notice of the claims alleged. *See Salahuddin v. Cuomo,* 861 F.2d 40 (2d Cir.1988); *Rokus v. American Broadcasting Co., Inc.,* 616 F.Supp. 110 (S.D.N.Y.1984). The allegations in the complaint that Defendants

---

**4.** Defendants' reliance on *Dahlberg v. Becker,* 748 F.2d 85 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985) and *Wright v. National Bank of Stamford,* 600 F.Supp. 1289 (N.D.N.Y.1985) is misplaced. Both of these cases involved self-help or misuse of a state statute, neither of which are present here.

wrongfully terminated the leasehold and ousted Plaintiff of possession, and that Plaintiff paid Defendants a sum of money for repairs which were not completed, are made in the context of Plaintiff's claim for relief under 42 U.S.C. § 1983. The complaint specifically states that these allegations entitle Plaintiff to relief under § 1983. Plaintiff now argues in Plaintiff's brief that these same allegations also state claims for relief under state law. However, the complaint does not mention any grounds for relief under state law based on these allegations. On its face, the complaint alleges only five causes of action: four actions under Section 1983 and one action under § 853 of the Real Property Act. Consequently, it is not clear that Defendants had fair notice of any other claims under state law, and the first four state law claims in Plaintiff's brief can not be fairly said to be in the complaint. The Court grants Plaintiff leave to amend the complaint to plead these four state law claims under Rule 15 of the Federal Rule of Civil Procedure.

██ Assuming Plaintiff amends the Complaint to plead the state law claims, the fact that Defendants acted in accordance with court orders does not prevent Plaintiff from stating a cause of action to recover the leasehold or to recover damages under state law. Defendants' argument to the contrary assumes the validity of the default judgment upon which the court orders were based. *Cf. Maracina v. Shirrmeister*, 105 A.D.2d 672, 482 N.Y.S.2d 14, 16 (1st Dept.1984) ("A judgment of possession in favor of the landlord which is later reversed or vacated renders the resultant eviction unlawful and the tenant is thereby entitled to be restored to the premises and to damages."); *Dzubey v. Teachers' College*, 87 A.D.2d 783, 449 N.Y.S.2d 489, 491 (1st Dept.1982) (" 'When the order [of eviction] was reversed and the proceeding dismissed, rights and duties were reestablished, *inter partes*, as if no order had been made' ..., with the result that 'restitution will be enforced in such circumstances, either through ejectment or its equivalent, at the instance of the tenant lawfully evicted.' ") (quoting *Golde Clothes Shop, Inc. v.*

*Loew's Buffalo Theatres, Inc.*, 236 N.Y. 465, 141 N.E. 917 (1923)). Plaintiff contends that the Albany default judgment is invalid because the court did not have jurisdiction due to LSA's unconstitutional service of process. Defendants claim that the default was constitutionally obtained. This Court has ruled that a determination as to the constitutionality of the default is not precluded in this case even now by the doctrine of collateral estoppel or res judicata. Consequently, the default judgment in the Albany action does not necessarily preclude Plaintiff from stating a claim under state law upon which relief may be granted.

### C. *Statute of Limitations*

#### 1. Plaintiff's § 1983 Claims

██ Because Congress did not establish a statute of limitations for § 1983 claims, a federal court deciding the timeliness of a § 1983 action must borrow the limitations period that applies to the most closely analogous state law action in the state in which it sits. *See Board of Regents of the Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Federal courts sitting in New York apply a three year limitations period to § 1983 claims. *See Conway v. Village of Mount Kisco*, 750 F.2d 205 (2d Cir.1984). Where a federal court applies a state statute of limitations to a federal claim, the court must apply that state's tolling principles to the federal claim as well. *Board of Regents v. Tomanio, supra.* CIT's motion to vacate the default was denied by the Supreme Court, Special Term in May of 1985, and the New York Court of Appeals denied CIT's appeal from the order denying leave to appeal in 1986. Defendants received possession of Sparrowbush in May of 1986. At the latest, Plaintiff's cause of action accrued in 1986. Plaintiff commenced this action in October of 1991. Plaintiff's § 1983 claim is therefore outside of the three year limitations period governing § 1983 actions.

██ Plaintiff argues that the action is nevertheless timely under C.P.L.R.

§ 205(a), which tolls the limitations period while the claimant is litigating an action upon the same transaction or occurrence and permits a new action to be commenced within six months of the prior proceeding. Plaintiff filed the present action within six months of the Chapter 11 Bankruptcy action, which terminated on July 26, 1991.

C.P.L.R. § 205(a) provides that:

If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff ... may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action.

The prior action need not be the same cause of action in order to invoke the tolling principle of § 205(a) as long as it is based on the same transaction or occurrence, such that "the defending party was fairly notified of the subject of the dispute within the limitations period." *Harris v. United States Liability Ins. Co.,* 746 F.2d 152, 154 (2d Cir.1984). CIT's petition in Bankruptcy Court to collaterally attack the default judgment placed Defendants on notice of Plaintiff's claim challenging the constitutionality of the default.

Defendants argue that a Bankruptcy proceeding is not an "action" for the purposes of § 205(a) and that the tolling statute therefore does not apply to the present case. This argument is not persuasive. The language of § 205(a) does not suggest that a bankruptcy proceeding is not an "action" and Defendants offer no justification for such a conclusion. Bankruptcy proceedings are commonly referred to as actions. *See, e.g.,* 28 U.S.C. § 151. Absent a decision by a New York court ruling that a bankruptcy proceeding is not an "action" under § 205(a), this Court is not inclined to make such a determination where the statutory policies served are equally applicable to actions brought in United States Bank-

ruptcy Court. Because the present action is brought upon the same transaction or occurrence as the Bankruptcy action—to set aside the Albany default judgment—the question is whether the prior action tolls the limitations period in the present case.

Defendants also argue that the Bankruptcy action was dismissed "for neglect to prosecute the action," rendering § 205(a) inapplicable. Plaintiff argues that CIT did not initiate the dismissal but merely responded to the U.S. Trustee's motion to convert the Chapter 11 proceeding to an action under Chapter 7 or alternatively to dismiss the case. The record indicates that the Bankruptcy proceeding was not dismissed for neglect to prosecute the action. Rather, the record indicates that the action ended when the business of the Bankruptcy Court was completed.

■ The question of when the six month period for filing the present action commenced is more difficult to resolve. Defendants argue that Plaintiff's attempt to collaterally attack the default ended, at the latest, in 1987 when the Second Circuit affirmed Judge Brieant's affirmance of Judge Schwartzberg's refusal to overturn the default. Plaintiff insists that the six month period did not commence until the entire Bankruptcy proceeding terminated in 1991. Plaintiff relies on the statutory language stating that it is the "termination" of the action that triggers the sixth month period, and argues that the Second Circuit's 1987 order did not terminate the bankruptcy action as a whole. The court finds Defendants' argument more persuasive.

In order for a new action to benefit from the tolling principles of § 205(a), the prior action must be based on the same transaction or occurrence. Reading the statute as a whole, the new action must be brought within six months of the termination of the *action upon the same transaction or occurrence.* An action is terminated at "that point of time in the litigation when the plaintiff has exhausted his rights with respect thereto." *Taylor v. G.P. Putnam's Sons,* 41 Misc.2d 1003, 247 N.Y.S.2d 80, 81 (1964) (citing *Brumel v. Hartford Fire Ins. Co.,* 158 Misc. 311, 316, 285 N.Y.S. 611, 616 (1936)). The action before the Bankruptcy

Court that was based on the same transaction or occurrence as the present action—the allegedly unconstitutional default—clearly terminated in 1987 when the Second Circuit finally disposed of Plaintiff's attempt to collaterally attack the default. At that time, the remaining claims before the Bankruptcy Court were not based on the same transaction or occurrence as the present § 1983 claim.

Thus, the question is whether a party may file a new lawsuit with the benefit of the tolling statute in an action when that part of the action based on the same transaction or occurrence as the new lawsuit ended long ago. Such a result would be inconsistent with the underlying purpose of § 205(a): to avoid the harsh effects of the statute of limitations where a party is actually litigating a timely claim which is dismissed for technical reasons that could be avoided in a new lawsuit. *See Graziano v. Pennell*, 371 F.2d 761, 763 (2d Cir.1967). In applying the statute, New York courts have been concerned not with "the technicalities of the form of relief requested," but with the subject matter of the dispute. *Harris v. United States Liability Ins. Co.*, 746 F.2d 152, 154 (2d Cir.1984). The fact that the Bankruptcy action as a whole did not technically terminate until July of 1991 does not entitle Plaintiff to file her lawsuit within six months of July, 1991, where that part of the action which triggered the application of the tolling statute in the first place ended in 1987. Plaintiff's Section 1983 claim, filed in October of 1991, is therefore dismissed under the statute of limitations.

### 2. Plaintiff's State Law Claims

Plaintiff's cause of action under § 853 of the New York Real Property Actions and Proceedings Law has a statute of limitations of at least one year and at the most three years. *See Kolomensky v. Wiener*, 135 A.D.2d 505, 522 N.Y.S.2d 156 (2d Dept.1987), *app. denied in part and dism'd in part*, 72 N.Y.2d 873, 532 N.Y.S.2d 365, 528 N.E.2d 517 (1988). This claim is not timely and is not saved by the tolling statute, § 205(a), for the reasons discussed above. The remaining four state law claims that Plaintiff argues are in the complaint would be timely. The first al-

leged state law claim, to recover the Sparrowbush leasehold, has a statute of limitations of ten years. C.P.L.R. § 212(a). The second and third alleged state law claims, to recover damages for the period during which Plaintiff was deprived of possession of the leasehold, and to recover damages for the reasonable value of the leasehold at the time it was terminated, are governed by the six year statute of limitations applicable to breach of contract actions. C.P.L.R. § 213. The fourth alleged state law claim, to recover in quasi-contract for CIT's payment of the $735,715.00 to Defendants for repairs to Sparrowbush which Defendants allegedly failed to make, does not have a specified statute of limitations. Since the legislature did not prescribe a statute of limitations for quasi-contract actions, the limitations period for this claim would be six years. C.P.L.R. § 213(1). These four state law claims would be timely without the benefit of the tolling statute.

Defendant's motion to dismiss Plaintiff's causes of action under 42 U.S.C. § 1983 and § 853 of the New York Real Property Actions and Proceedings Law is granted. Plaintiff has alleged diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiff is granted leave to amend the complaint under F.R.C.P. 15(a) to plead any remaining claims upon which relief may be granted under state law.