**Dwayne Richard JOHNSON et al., Plaintiffs**

v.

**Guy A. ANHORN et al., Defendants**

**Daniel A. Antonelli, Plaintiff**

v.

**Guy A. Anhorn et al., Defendants**

**No. 03–2424, 04–146.**

United States District Court, E.D. Pennsylvania.

Sept. 9, 2004.

John I. McMahon, Jr., McMahon & McMahon, Norristown, PA, for Plaintiffs.

Anthony R. Sherr, Mayers Mennies & Sherr LLP, Blue Bell, PA, John P. Gonzales, Marshall Dennehey Warner Coleman & Goggin, Joseph J. Santarone, Jr., Marshall Dennehey Warner Coleman & Goggin, Norristown, PA, for Defendant.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

On April 22, 2003, plaintiffs Dwayne Richard Johnson ("Johnson"), Damian A. Graham ("Graham"), Charles Henry Covington ("Covington") and Phenix Crumpton ("Crumpton"), collectively the "Johnson plaintiffs," filed this civil rights action against defendants Whitemarsh Township Police Sergeant Guy A. Anhorn ("Anhorn"), Whitemarsh Township Police Lieutenant Jessie Stemple ("Stemple"), Whitemarsh Township Police Department, and Whitemarsh Township. On March 5, 2004, the Johnson plaintiffs amended their complaint, which now brings claims against defendants Anhorn; Stemple; Whitemarsh Township; Whitemarsh Township Police Officers, Supervisors and Policymakers John Doe I through X; Whitemarsh Township Supervisors Ronald J. Derosa ("Derosa"), Ann Younglove ("Younglove"), William P. Rimell, III ("Rimell"), Peter B. Cornog ("Cornog"), and Michael A. Zeock ("Zeock"); and Whitemarsh Township Manager Lawrence Gregan ("Gregan").

On January 14, 2004, plaintiff Daniel Antonelli ("Antonelli") filed a separate civil rights action alleging the same facts as in the Johnson amended complaint and bringing the same claims against the same defendants. These cases have been consolidated for discovery purposes.

Defendant Anhorn has individually filed nearly identical motions to dismiss portions of both the Johnson plaintiffs' amended complaint and the Antonelli complaint. I will address these two motions together.

In addition to the two motions to dismiss filed by Anhorn, defendants Stemple, Whitemarsh Township, DeRosa, Younglove, Cornog, Zeock, Rimell and Gregan have filed a third, separate motion to dismiss in the Antonelli case. These defendants argue that: (1) Count Fourteen, the claim under 42 U.S.C. § 1986 against Stemple, Derosa, Younglove, Cornog, Zeock, Rimell and Gregan should be dismissed; (2) Count Fifteen, the claim under § 1988 against all defendants should be dismissed; and (3) all remaining claims against defendant Stemple should be dismissed. Plaintiff has not responded to this third motion to dismiss and I will grant it.

### Relevant Facts Alleged in the Complaints [1]

The Johnson plaintiffs' amended complaint and Antonelli's complaint each include the allegations of all five plaintiffs. For ease of reference, I will cite to the Johnson plaintiffs' amended complaint in this opinion, although all facts are alleged in both complaints.

Plaintiffs are African–American and residents of Pennsylvania. (Johnson Am. Compl.¶¶ 6–9.) All plaintiffs allege that, on September 20, 2002 at 12:10 p.m., while plaintiff Johnson was a customer at the Amoco Service Station in Whitemarsh Township, a Caucasian employee of the gas station threatened Johnson with bodily harm and directed racial epitaphs at him.

---

**1.** As required when ruling on a motion to dismiss, the facts as averred by plaintiffs are accepted as true for purposes of this motion. *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996).

(*Id.* at ¶ 34.) Greatly alarmed, Johnson left the Amoco and immediately reported the incident to the Whitemarsh Township Police Department. Thereafter, defendant Anhorn phoned Johnson and told Johnson not to return to the Amoco, and that if Johnson were to return to the Amoco he would be in "serious trouble" with the Whitemarsh Township Police Department. (*Id.* at ¶ 34.) Anhorn also called Johnson at a later time to tell Johnson that Anhorn had heard that Johnson had again gone to the Amoco and that Johnson is not permitted to go to the Amoco "as long as [he] lives." (*Id.*) Johnson's brother, C. Reginald Johnson, Esquire, twice reported these incidents to the Whitemarsh Township Police Department. (*Id.* at ¶ 35.) However, no one responded to these reports or did anything to redress Anhorn's actions. (*Id.*)

All plaintiffs further allege that Anhorn made nearly identical illegal stops of Graham, Covington and Antonelli. All three men were driving cars lawfully when Anhorn stopped them [2] and interrogated each man about what he was doing in the area before directing each out of his car. (*Id.* at ¶¶ 25, 37, 41.) Anhorn then searched each plaintiff's car and person. Anhorn prepared affidavits of probable cause containing false allegations against plaintiffs. (*Id.* at ¶¶ 27, 39, 43.) These affidavits were the bases of criminal charges brought against the men. (*Id.* at ¶¶ 28, 40, 44.) [3]

Finally, all plaintiffs allege that civil rights violations, in particular violations by Anhorn, have been occurring for years at the Whitemarsh Township Police Department and that defendants have conspired to cover up these violations. (*Id.* at ¶¶ 50–65.)

The Johnson plaintiffs and Antonelli each bring the following fifteen claims: (1) violation of 42 U.S.C. § 1983 by Anhorn; (2) violation of 42 U.S.C. § 1981 by Anhorn; (3) violation of 42 U.S.C. § 1985 by Stemple, Anhorn, and Police Officers John Doe I through X; (4) violation of 42 U.S.C. § 1983 against Whitemarsh Township; (5) civil conspiracy against Stemple, Anhorn, and Police Officers John Doe I through X; (6) false imprisonment against Anhorn; (7) malicious prosecution against Anhorn; (8) abuse of process against Anhorn; (9) invasion of privacy against Anhorn; (10) intentional infliction of emotional distress against Anhorn; (11) violation of 42 U.S.C. § 1983 against Stemple; (12) violation of 42 U.S.C. § 1981 against Stemple; (13) violation of 42 U.S.C. § 1983 against Stemple and John Doe Police Officers VII through X; (14) violation of 42 U.S.C. § 1986 against Stemple, DeRosa, Younglove, Rimell, Cornog, Zeock, Gregan, and Police Officers John Doe I through X; (15) violation of 42 U.S.C. § 1988 against all defendants.

### Standard of Review

In considering motions to dismiss for failure to state a claim, the Court takes all

---

**2.** Antonelli was stopped while driving his blue Ford Probe on Ridge Pike on October 7, 2002 at 12:24 a.m. (*Id.* at ¶ 25.) Crumpton was a passenger in Antonelli's car. (*Id.* at ¶ 45.) Covington was stopped while driving his 2002 Jaguar on Ridge Pike near Barron Hill Road on December 29, 2002. (*Id.* at ¶ 41.) Graham was stopped while driving a black Toyota Land Cruiser near the Texaco Service Station at Germantown Pike and Center Avenue on November 4, 2001 at 3:25 a.m. (*Id.* at ¶ 37.)

**3.** Although the complaints do not indicate the outcome of the criminal charges against Graham and Covington, the criminal charges against Antonelli were dismissed on September 2, 2003. (Pl. Answer Mot. Dismiss Ex. A: September 2, 2003 Nolle Prosequi Order in the matter of *Commonwealth of Pennsylvania v. Daniel Antonelli*, criminal docket # A7608-02, Ct. Common Pleas, Montgomery Co., Pa.)

well pleaded allegations as true, construes the complaint in the light most favorable to the plaintiff, and determines whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief. *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 665 (3d. Cir.1988).

### Discussion

Defendant Anhorn contends that plaintiffs have failed to allege violations of (1) the Thirteenth Amendment; and (2) the Fourteenth Amendment sufficient to sustain their Count One § 1983 claims against him.[4] Anhorn also contends that: (3) plaintiffs' state law claims for invasion of privacy are time-barred; and (4) portions of plaintiffs' complaints should be stricken pursuant to Federal Rule of Civil Procedure 12(b)(f). I will address each argument in turn.

### § 1983 Claims under the Thirteenth Amendment

■ Count One of plaintiffs' complaints, the § 1983 claim against Anhorn, alleges that Anhorn violated plaintiffs' constitutional rights under the Fourth, Thirteenth, Fourteenth, and Fifteenth Amendments. First, Anhorn challenges plaintiffs' inclusion of the Thirteenth Amendment, that states, in pertinent part: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. CONST. amend. XIII, § 1. "The primary purpose of the [Thirteenth] Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase 'involuntary servitude' was intended to extend to cover those forms of compulsory labor akin to African slavery which in practical

operation would tend to produce like undesirable results." *United States v. Kozminski*, 487 U.S. 931, 942, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988) (internal citations omitted). The Third Circuit has further explained that the "prohibition against involuntary servitude has always barred forced labor through physical coercion." *Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 998 (3d Cir.1993) (*abrogated on other grounds by Troster v. Pennsylvania State Dep't Corrs.*, 65 F.3d 1086, 1090 (3d Cir. 1995).)

■ Plaintiffs' complaints are devoid of any allegations of forced labor. Plaintiffs nonetheless argue that the Thirteenth Amendment is applicable here, apparently suggesting that any person imprisoned by the government based on fraudulent evidence may bring a Thirteenth Amendment claim via § 1983. In support of this argument, plaintiffs rely solely on Third Circuit dicta stating that "[m]odern day examples of involuntary servitude have been limited to labor camps, isolated religious sects, or *forced confinement.*" *Steirer*, 987 F.2d at 999 (emphasis added). The Third Circuit, however, supported this statement by citing cases in which the plaintiffs were physically confined *and* had no alternative but to perform labor. *See United States v. King*, 840 F.2d 1276, 1281 (6th Cir.1988) (defendants used physical force to make children perform labor); *United States v. Booker*, 655 F.2d 562, 563, 566 (4th Cir. 1981) (migrant workers injured, kidnaped, and threatened with serious injury or death if they attempted to leave labor camp before paying debts); *Jobson v. Henne*, 355 F.2d 129, 131–32 (2d Cir.1966) (mental institution inmate alleged conditions "tantamount to slave labor"). Because plaintiffs have failed to allege any

---

4. Anhorn also argues that plaintiffs' claims under the Fifteenth Amendment and the Pennsylvania Constitution should be dismissed. Plaintiffs have conceded this point and these claims will be dismissed.

conduct that could arguably be interpreted as involuntary servitude, their § 1983 claims under the Thirteenth Amendment must be dismissed.

### § 1983 Claims under the Fourteenth Amendment

Anhorn argues that plaintiffs have not properly pled Fourteenth Amendment claims for racial profiling or failure to protect under 42 U.S.C. § 1983. Anhorn's motions to dismiss the § 1983 claims based on Fourteenth Amendment violations are denied without prejudice to reassert at a later stage.

### Invasion of Privacy Claim in Antonelli v. Anhorn

■■■ Anhorn argues that Antonelli's invasion of privacy state law claim is time-barred. "To state a cause of action for the tort of invasion of privacy in Pennsylvania, a plaintiff must aver that there is an intentional intrusion on the seclusion of their private concerns which is substantial and highly offensive to a reasonable person, and aver sufficient facts to establish that the information disclosed would cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Pro Golf Mfg. v. Tribune Review Newspaper Co.*, 570 Pa. 242, 809 A.2d 243 (2002). The applicable statute of limitations for an invasion of privacy claim in Pennsylvania is one year. 42 Pa.C.S. § 5523.

■ The incident giving rise to the invasion of privacy claim in the Antonelli case occurred on October 7, 2002 when Anhorn stopped Antonelli's car. Antonelli filed his complaint on January 20, 2004, more than fifteen months after the stop. Antonelli contends that his invasion of privacy claim is nonetheless time permitted because the criminal charges against him were not dismissed until September 2, 2003.

Plaintiff refers the court to *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck*, the Supreme Court considered whether a plaintiff bringing a § 1983 claim alleging that his conviction violated his constitutional rights needed to first prove that his conviction had been declared invalid. The Court turned to the common law cause of action for malicious prosecution for an analogy to the § 1983 claim, because a malicious prosecution claim "permits damages for confinement imposed pursuant to legal process." *Heck*, 512 U.S. at 484, 114 S.Ct. 2364. The Court noted that "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Id.* Finally, the Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."

512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

The Seventh Circuit has held that, in the *Heck* situation, plaintiff's claims do not accrue until the day on which the criminal charge is dismissed. *Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir.1997).

Plaintiff contends that his common law invasion of privacy claim necessarily implies the invalidity of his conviction in the same way the § 1983 action in *Heck*, which alleged constitutional violations directly leading to a conviction, necessarily implied the invalidity of a conviction. Courts have found invasion of privacy claims to necessarily imply the invalidity of convictions. *See Dill v. Village of Gowanda*, 952

F.Supp. 989, 994 (W.D.N.Y.1997) (claims of false arrest, false imprisonment, invasion of privacy and malicious prosecution necessarily implied the invalidity of a conviction because the claims presumed that defendant police officers stopped plaintiffs without probable cause and that the charge of driving without a license was therefore invalid.) [5] It is too early in the litigation to know if plaintiff's invasion of privacy claim necessarily relies on the dismissal of the criminal charges against him. Anhorn's motion to dismiss Antonelli's invasion of privacy claim is denied.

### Invasion of Privacy Claim in Johnson v. Anhorn

 Anhorn also argues that the Johnson plaintiffs' invasion of privacy claim is time-barred. In that case, plaintiffs allege unlawful conduct that occurred on November 4, 2001; September 20, 2002; October 7, 2002; and December 29, 2002. The Johnson plaintiffs filed their original complaint on April 22, 2003 and their amended complaint on March 5, 2004. Plaintiffs argue that the invasion of privacy claim should "relate back" to the date of the original filing, pursuant to Federal Rule of Civil Procedure 15(c), which states, in pertinent part:

> An amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

Fed.R.Civ.P. 15(c)(2).

"Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint." *Singletary v. Pennsylvania Dep't of Corrs.*, 266 F.3d 186, 193 (3d Cir.2001). Here, plaintiffs' original complaint concerned the same occurrences as the amended complaint. The original complaint specifically alleged that plaintiffs' rights to privacy were violated. (Compl. at ¶¶ 26, 35, 44.) Plaintiffs have satisfied the requirements of Rule 15(c)(2) and the invasion of privacy claim asserted in their amended complaint relates back to the date they filed their original complaint. The Johnson plaintiffs' invasion of privacy claim is therefore not time-barred. Anhorn's motion to dismiss the Johnson plaintiffs' invasion of privacy claim is denied.

### Motion to Strike Scandalous Matter

Paragraphs 82 and 83 of the complaints contain allegations that read, in part: "Defendants, together, conspired, or went in disguise on the highway or on the premises of plaintiffs." Anhorn moves to strike the language "disguise on the highway" as scandalous, arguing that it "resurrect(s) images not in any way related to the underlying claims," "reflect(s) cruelly upon the Defendants," and "detract(s) from the dignity of the Court." (Def. Mot. Dismiss Johnson Am. Compl. 16.)

Federal Rule of Civil Procedure 12(f) provides, in relevant part:

> Upon motion made by a party ... within 20 days after the service of the pleading upon the party ... the court may order stricken from any pleading any insufficient defense or any redun-

---

5. *See also Hemphill v. Haglund*, 45 Fed.Appx. 519, 520 (6th Cir.2002) (*unpublished*) (invasion of privacy action against arresting police officer necessarily implied invalidity of plaintiff's conviction); *Housley v. United States*, No. 97–15831, 1998 WL 476473, at *2, 1998 U.S.App. LEXIS 17539 at *3 (9th Cir. July 28, 1998) (*unpublished*) (prisoner's invasion of privacy claim against agents of Department of Justice, alleging that the agents used illegal electronic surveillance devices during their investigation of him, would necessarily implicate his underlying conviction).

dant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.P. 12(f).

■■■ "The standard for striking under Rule 12(f) is strict and ... only allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken." *Becker v. Chicago Title Ins. Co.*, No. Civ. A. 03–2292, 2004 U.S. Dist. LEXIS 1988, at \*18, 2004 WL 228672, at \*6 (E.D.Pa. Feb.4, 2004) (internal citations omitted). "Striking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice." *United States v. American Elec. Power Serv. Corp.*, 218 F.Supp.2d 931 (D.C.Ohio 2002). "Grounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed." *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 554 (D.C.Haw. 1998) (granting a motion to strike when plaintiffs referred to defendants' conduct in an insurance dispute as "siege warfare.") It is unclear what plaintiffs mean to convey by the phrase, "went in disguise on the highway." However, the phrase does not appear to be "scandalous" such that it would be appropriate to take the "drastic" measure of striking plaintiffs' pleading. Defendant's motions to strike are therefore denied.

### *ORDER*

**AND NOW**, this 7th day of September 2004, it is **ORDERED** that:

In the matter of *Johnson v. Anhorn*, Civ. A. No. 03–2424, defendant Anhorn's motion to dismiss (Docket # 22) is resolved as follows:

- The motion to dismiss Count One with respect to the Fourth and Fourteenth Amendment claims is **DENIED**.
- The motion to dismiss Count One with respect to the Pennsylvania Constitution and the Thirteenth and Fifteenth Amendment claims is **GRANTED**.
- The motion to dismiss Counts Two and Three with respect to the Fifteenth Amendment and the Pennsylvania Constitution is **GRANTED**.
- The motion to dismiss Count Nine is **DENIED**.
- The motion to strike scandalous matter is DENIED.

In the matter of *Antonelli v. Anhorn*, Civ. A. No. 04–146, defendant Anhorn's motion to dismiss (Docket # 19) is resolved as follows:

- The motion to dismiss Count One with respect to the Fourth and Fourteenth Amendment claims is **DENIED**.
- The motion to dismiss Count One with respect to the Pennsylvania Constitution and the Thirteenth and Fifteenth Amendment claims is **GRANTED**.
- The motion to dismiss Counts Two and Three with respect to the Fifteenth Amendment and the Pennsylvania Constitution is **GRANTED**.
- The motion to dismiss Count Nine is **DENIED**.
- The motion to strike scandalous matter is **DENIED**.

In the matter of *Antonelli v. Anhorn*, 04–146, defendants' motion to dismiss (Docket # 17) is resolved as follows:

- The motion to dismiss Count Fourteen is **GRANTED**.
- The motion to dismiss Count Fifteen is **GRANTED**.
- The motion to dismiss all claims against defendant Stemple is **GRANTED**. All claims against Stemple are **DISMISSED**.